# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CT-00984-SCT

*JAY JONES*

*v.*

*CITY OF RIDGELAND*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/28/2009 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JOHN MICHAEL DUNCAN |
| ATTORNEY FOR APPELLEE: | BOTY McDONALD |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS VACATED. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED. THE CONVICTION BY THE COUNTY COURT OF MADISON COUNTY OF DUI FIRST OFFENSE AND CARELESS DRIVING AND SENTENCE OF FORTY-EIGHT (48) HOURS IN JAIL AND A FINE OF FIFTY (50) DOLLARS, WITH CONDITIONS, AFFIRMED - 11/18/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Jay Jones entered a plea of *nolo contendere* in the Municipal Court of Ridgeland for

driving under the influence (DUI), possession of an open container of alcohol, and careless

driving. Jones appealed to the County Court of Madison County and, after a trial de novo, he was found guilty of DUI and careless driving. Jones then appealed to the Circuit Court of Madison County, which affirmed the judgment of the county court. Jones appealed to us, and we assigned this case to the Court of Appeals. The City of Ridgeland filed a motion to dismiss, and the Court of Appeals granted the motion pursuant to Mississippi Code Section 11-51-81 (Rev. 2002). Having granted Jones's Petition for Writ of Certiorari, we now consider the issue of the constitutionality of the "three-court rule" found in Section 11-51-81.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On Saturday evening, June 10, 2006, Ridgeland police officers Michael Ivy and Grady Fisher were on patrol near the intersection of Old Canton Road and Lake Harbour Drive.[1] Ivy was driving the police cruiser, and Fisher occupied the front seat, passenger side, of the vehicle. As they proceeded east on Lake Harbour Drive, they passed the Buffalo Wild Wings Restaurant located on the north side of Lake Harbour Drive. In the area of Buffalo Wild Wings, Lake Harbour Drive is a boulevard with two lanes for east-bound traffic and two lanes for west-bound traffic. Fisher observed what he believed to be an argument among several males in the Buffalo Wild Wings parking lot. Fisher alerted Ivy, who traveled a short distance in order to "cross over" and travel west-bound back to the Buffalo Wild Wings parking lot. By the time the officers reached the parking lot, a man later identified as Jay Jones was exiting the parking lot in his vehicle. Jones's vehicle almost collided with the

---

[1]Some of the facts surrounding the stop of Jay Jones's vehicle are in dispute. For the purpose of our discussion, we state the facts in the light most favorable to the prosecution.

2

police officers' patrol car. Jones was not wearing a seatbelt. The officers followed Jones's vehicle out of the parking lot and observed Jones making an unusually wide turn as he pulled out of the parking lot traveling west on Lake Harbour Drive. Jones then turned right at the nearby intersection and proceeded north on Old Canton Road, after failing to stop at the red light at the intersection. Jones also failed to stop as he traveled north on Old Canton Road, although Ivy and Fisher by then had activated the blue lights and siren of their police cruiser. Once a second patrol car pulled alongside Jones's vehicle, Jones stopped on Old Canton Road. As he approached Jones's car, Ivy observed Jones passing a beer bottle to his passenger. When he arrived at the driver's side door of Jones's vehicle, Ivy detected a strong odor of alcohol coming from inside the vehicle. Ivy administered a field-sobriety test to Jones and a Breathalyzer test, which was positive for the presence of alcohol. Jones was arrested and charged with DUI, careless driving, and possession of an open container.

¶3.     Jones pleaded *nolo contendere* in the Municipal Court of Ridgeland and appealed to the County Court of Madison County, where he was afforded a trial de novo,[2] Judge Ed Hannan presiding. At his county-court trial, Jones filed a motion to dismiss, asserting that the police officers had lacked probable cause to stop his vehicle. The motion was denied, and Judge Hannan found Jones guilty of DUI and careless driving, sentencing him to forty-eight hours in jail and fining him $700 for the DUI and $50 for careless driving.[3] Jones then filed

---

[2]The county-court judge conducted a bench trial.

[3]Judge Hannan dismissed the charge of possession of an open container of alcohol.

3

a notice of appeal in the Circuit Court of Madison County. The circuit court, sitting as an appellate court, affirmed the county court's judgment of conviction and sentence. Jones then filed a notice of appeal with this Court, arguing that the county court had erred when it had denied his motion to dismiss due to the police officers' lack of probable cause to conduct a stop of his vehicle. We assigned this case to the Court of Appeals.

¶4.     After Jones filed his appellant's brief, the City of Ridgeland filed a motion to dismiss the appeal. The motion was based on the "three-court rule" contained within Mississippi Code Section 11-51-81 (Rev. 2002). In due course, the Court of Appeals entered an order dismissing Jones's appeal pursuant to Section 11-51-81. Jones's motion for reconsideration was denied by the Court of Appeals, and this Court granted Jones's subsequently filed petition for writ of certiorari. Upon granting certiorari, we entered an order allowing the parties to brief the issue of the constitutionality of the "three-court rule" in Section 11-51-81, and we likewise invited the Attorney General of Mississippi to submit a brief on this issue.[4] We now have received additional briefs from Jones and the Attorney General.

## DISCUSSION

¶5.     Before the Court of Appeals, Jones's main argument was that the county-court judge had erred when he had failed to dismiss the charges against him. Jones had alleged that the City of Ridgeland police officers who had stopped him on the night in question had lacked

---

[4]This Court may request the parties to argue an issue not distinctly identified for review. Mississippi Rule of Appellate Procedure 28(a)(3): "No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified."

probable cause to do so. However, whether we reach this issue today depends on our disposition of the critical issue before this Court, the constitutionality of the "three-court rule" contained in Section 11-51-81. Thus, we first discuss this issue.

## I. WHETHER THE "THREE-COURT RULE" IN MISSISSIPPI CODE SECTION 11-51-81 IS CONSTITUTIONAL.

¶6. The Court of Appeals dismissed Jones's appeal pursuant to Mississippi Code Section 11-51-81 (Rev. 2002), which prohibits defendants who are aggrieved by a decision originating in justice or municipal court, and who have appealed to both county court and circuit court, from successfully appealing to this Court unless two requirements are met: (1) the appeal must involve a federal or state constitutional question, and (2) either the circuit court judge or a Supreme Court justice must "allow" the appeal. Section 11-51-81 reads:

> All appeals from courts of justices of the peace, special and general, and from all municipal courts shall be to the county court under the same rules and regulations as are provided on appeals to the circuit court, but appeals from orders of the board of supervisors, municipal boards, and other tribunals other than courts of justice of the peace and municipal courts, shall be direct to the circuit court as heretofore. And from the final judgment of the county court in a case appealed to it under this section, a further appeal may be taken to the circuit court on the same terms and in the same manner as other appeals from the county court to the circuit court are taken: Provided that where the judgment or record of the justice of the peace, municipal or police court is not properly certified, or is certified at all, that question must be raised in the county court in the absence of which the defect shall be deemed as waived and by such waiver cured and may not thereafter be raised for the first time in the circuit court on the appeal there to; and provided further that <u>there shall be no appeal from the circuit court to the supreme court of any case civil or criminal which originated in a justice of the peace, municipal or police court and was thence appealed to the county court and thence to the circuit court unless in the determination of the case a constitutional question be necessarily involved and then only upon the allowance of the appeal by the circuit judge or by a judge of the supreme court.</u>

5

Miss. Code Ann. § 11-51-81 (Rev. 2002) (emphasis added).

¶7.    Of the eighty-two counties in Mississippi, twenty counties have county courts. The litigants in these twenty counties whose cases originate in justice or municipal court and are appealed to county court and then to circuit court may not appeal to this Court unless their cases concern a constitutional question *and* the circuit judge or a supreme court justice allows the appeal. On the other hand, litigants in the sixty-two counties that do not have county courts may appeal to this Court when their cases originate in justice or municipal court and are appealed to circuit court, which conducts a trial de novo.[5] We find that the effect of this statute is that it prevents this Court from hearing appeals from cases originating in the justice or municipal courts of the twenty counties having county courts; thus, the statute usurps this Court's constitutional power to establish procedural rules. Accordingly, today we announce that the "three-court rule" in Section 11-51-81 is unconstitutional and void.

---

[5]Jones argues in his brief that the statute is unconstitutional because it deprives litigants in the twenty counties with county courts of an appeal to this Court and, as a result, violates the Equal Protection Clause. This argument was addressed in ***Worley v. Pappas***, 161 Miss. 330, 135 So. 348 (1931), in which this Court held that the statute does not deprive litigants of equal protection of the law. The United States Supreme Court has also held that establishing one system of law within a particular territory of a state and another system within other territories of the same state does not violate the Equal Protection Clause. ***Missouri v. Lewis***, 101 U.S. 22, 30-31, 25 L. Ed. 989 (1879). While the argument that the statute deprives certain litigants of equal access to the courts merits recognition, the general principle of separation of powers prohibits the Legislature from establishing procedural rules that permit some litigants to appeal to the Court, while prohibiting others from doing so. This is the subject of this opinion.

6

¶8. The Mississippi Constitution grants the three coequal branches of government their power and prohibits the branches from infringing on the power granted to another. Article 1, Section 1, of our Constitution creates the three branches of government. "The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another." Miss. Const. art. 1, § 1 (1890). Article 1, Section 2, of our Constitution further separates the three branches and prohibits one branch from exercising the power of another. "No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others." Miss. Const. art. 1, § 2.

¶9. The separation-of-powers doctrine outlined in Article 1, Sections 1 and 2, of our Constitution prescribes the limitations on the power of each branch of government. This doctrine ensures that the coequal branches do not encroach on the power of the others. *Alexander v. State By and Through Allain*, 441 So. 2d 1329, 1335-36 (Miss. 1983). Further, this Court has held that "[t]he rule is well settled that the judicial power cannot be taken away by legislative action. Nor may the Legislature regulate the judicial discretion or judgment that is vested in the courts. Any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional." *City of Belmont v. Miss. State Tax Comm'n*, 860 So. 2d 289, 297 (Miss. 2003) (citing 16A Am. Jur. 2d *Constitutional Law* § 286, at 209-10 (1998)).

¶10.   We also must be cautious not to encroach on the constitutional powers belonging to the Legislature.  *See Finn v. State*, 978 So. 2d 1270, 1273 (Miss. 2008) (citing *Miss. Ethics Comm'n v. Grisham*, 957 So. 2d 997, 1003 (Miss. 2007)).  Our appellate jurisdiction is granted by both the Constitution and the Legislature "by general law."  Miss. Const. art. 6, §146.  Further, we have consistently held that a litigant's right to an appeal is statutory and "not based on any inherent common law or constitutional right."  *Gill v. Miss. Dep't of Wildlife Conservation*, 574 So. 2d 586, 590 (Miss. 1990); *Flemming v. State*, 553 So. 2d 505, 506 (Miss. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312-13, 77 L. Ed. 2d 987 (1983)).

¶11.   While the Legislature has the constitutional power to determine our appellate jurisdiction, the Constitution also grants the judiciary the power to establish its own rules of practice and procedure.  Article 6, Section 144, states that "[t]he judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this Constitution."  Miss. Const. art. 6, § 144.  "The phrase 'judicial power' in Section 144 of the Constitution includes the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business."  *S. Pac. Lumber Co v. Reynolds*, 206 So. 2d 334, 335 (Miss. 1968) (citations omitted).  The "fundamental constitutional concept of separation of powers" gives this Court the "inherent power . . . to promulgate procedural rules."  *Newell v. State*, 308 So. 2d 71, 76 (Miss. 1975) (citing *Matthews v. State*, 288 So. 2d 714, 715 (Miss. 1974); *Gulf Coast Drilling & Exploration*

*Co. v. Permenter*, 214 So. 2d 601, 603 (Miss. 1968); and ***S. Pac. Lumber. Co.***, 206 So. 2d at 335 (Miss. 1968)).

¶12. The issue before us is whether the Legislature may allow some litigants to appeal to this Court, while placing the restrictions of a constitutional question and approval from a circuit judge or Supreme Court justice on others. More specifically, does the "three-court rule" in Section 11-51-81 infringe on this Court's constitutional "power to make rules of practice and procedure[?]" ***S. Pac. Lumber Co.***, 206 So. 2d at 335. In addressing this issue, "we are unable to ignore the constitutional imperative that the Legislature refrain from promulgating procedural statutes . . . ." ***Wimley v. Reid***, 991 So. 2d 135, 138 (Miss. 2008). "We believe no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the Constitution and the legislative enactment, the latter must yield." *Newell*, 308 So. 2d at 77. "The rule is well settled that the judicial power cannot be taken away by legislative action. Nor may the Legislature regulate the judicial discretion or judgment that is vested in the courts." 16A Am. Jur. 2d *Constitutional Law* § 286, at 209-10 (1998).

¶13. In 1975, we first exercised our constitutional right to promulgate procedural rules in *Newell*. *Newell,* 308 So. 2d at 76. Based on this authority, we adopted the Rules of Civil Procedure in 1981, the Rules of Evidence in 1985, and the Rules of Appellate Procedure in 1995. This power is also supported by statute. Mississippi Code Section 9-3-61 states in part:

9

As a part of the judicial power granted in Article 6, Section 144, of the Mississippi Constitution of 1890, the Supreme Court has the power to prescribe from time to time by general rules the form of process, writs, pleadings, motions, rules of evidence and the practice and procedure for trials and appeals in the Court of Appeals and in the circuit, chancery and county courts of this state and for appeals to the Supreme Court from interlocutory or final orders of trial courts and administrative boards and agencies, and certiorari from the Court of Appeals.

Miss. Code Ann. § 9-3-61 (Rev. 2002).

¶14.    The Mississippi Rules of Appellate Procedure begin by stating "[t]hese rules govern procedure in appeals to the Supreme Court of Mississippi and the Court of Appeals of the State of Mississippi . . . ." M.R.A.P 1.  The comment to Rule 1 explains that the rules "are not to be construed to extend or limit jurisdiction of the Supreme Court." Keeping in mind this Court's constitutional rule-making authority and the Legislature's constitutional authority to establish our appellate jurisdiction, the essential inquiry then becomes whether Section 11-51-81 is  a legislative grant of jurisdiction or an infringement on our power to promulgate rules of procedure.

¶15.    We view the statute to be procedural in nature rather than jurisdictional.[6]  Procedure is defined as "[t]he mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or defines the rights, and which, by means of the proceedings, the court is to administer; the machinery, as distinguished from its product."

---

[6]Accordingly, we expressly overrule this Court's holding in **Sumrall v. City of Jackson**, 576 So. 2d 1259, 1260 (Miss. 1991), that the requirements of a constitutional question and the approval of a circuit judge or Supreme Court justice in Section 11-51-81 are jurisdictional.

10

*Black's Law Dictionary* 1203-04 (6th ed. 1990).  When appealing to this Court, litigants use our Rules of Appellate Procedure as their "mode of proceeding" to ensure that the contested "legal right is enforced." The "three-court rule" in Section 11-51-81 essentially turns off this Court's "machinery" in the appeals process.

¶16.    We feel it important to emphasize that today's opinion is not intended to address, one way or the other, other statutes which provide for the right to an appeal.  We limit our holding today to the "three-court rule" contained within Section 11-51-81 – that and that alone.

¶17.    The issue of legislative usurpation of this Court's rule-making power is not without precedent.  In *Newell*, we held that a statute prohibiting trial judges from instructing the jury on the testimony or weight of the evidence unless one of the parties had requested the instruction was an unconstitutional infringement on the judiciary's inherent rule-making authority.  *Newell*, 308 So. 2d at 77-78.  This Court in *Newell* characterized procedural statutes as "legislative suggestions," to be followed only "unless determined to be an impediment to justice or an impingement upon the Constitution."  *Id.* at 76.  In *Glenn v. Herring*, 415 So. 2d 695, 698 (Miss. 1982), we held that a statute requiring trial judges to render opinions in cases taken under advisement within six months violated the doctrine of separation of powers by impinging on our power to promulgate procedural rules.  In *Moran v. Necaise*, 437 So. 2d 1222, 1225 (Miss. 1983), we exercised our rule-making power by prescribing a thirty-day time period after entry of judgment for perfecting an appeal, voiding a statute providing a forty-five-day time period for perfecting appeals.

11

¶18. For an appreciable period of time in our nation's history, the power to promulgate the courts' rules of practice and procedure was legislative. Many courts, including this Court and several courts of our sister states, have since found this power to be judicial, rather than legislative. In accordance with this power, the courts have judicially enacted rules and subsequently found statutes that trespass into the realm of judicial rule-making to be void. For example, the District Court of Maryland has held that a statutory prescription of the time period in which a person must be brought to trial was an unconstitutional encroachment on the judiciary. *U.S. v. Howard*, 440 F. Supp. 1106, 1113 (D.C. Md. 1977).

¶19. The Attorney General argues that voiding the statute will cause this Court to be "overwhelmed with appeals." However, "[t]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *Alexander*, 441 So. 2d at 1339 (citing *INS v. Chadha*, 462 U.S. 919, 944, 103 S. Ct. 2764, 2780-81, 77 L. Ed. 2d 317, 340 (1983)).

¶20. In the end, we conclude that the "three-court rule" found in Mississippi Code Section 11-51-81 (Rev. 2002) contravenes the constitutional mandates imposed upon the Legislature and the judiciary.[7] The Legislature may not "exercise any power properly belonging" to the

---

[7]The cases in which this Court and the Court of Appeals have dismissed appeals pursuant to Section 11-51-81 are now overruled as to this point. *Davidson v. State*, 592 So. 2d 1006 (Miss. 1992); *Sumrall v. City of Jackson*, 576 So. 2d 1259 (Miss. 1991); *Barrett v. State*, 491 So. 2d 833 (Miss. 1986); *Alt v. City of Biloxi*, 397 So. 2d 897 (Miss. 1981); *Wells v. State*, 201 Miss. 249, 29 So. 2d 119 (1947); *Kitchens v. State*, 198 Miss. 346, 22 So. 2d 493 (1945); *State v. Warren*, 197 Miss. 13, 19 So. 2d 491 (1944); *Keeton v. State*, 197 Miss. 11, 19 So. 2d 477 (1944); *Johnson v. City of Hattiesburg*, 170 Miss. 527, 155 So. 418 (1934); *Gray v. Crump*, 162 Miss. 251, 139 So. 463 (1932); *Williams v. State*, 160 Miss.

judiciary. Miss. Const. art. 1, § 2. We thus find this portion of Section 11-51-81 to be unconstitutional:

> [A]nd provided further that there shall be no appeal from the circuit court to the supreme court of any case civil or criminal which originated in a justice of the peace, municipal or police court and was thence appealed to the county court and thence to the circuit court unless in the determination of the case a constitutional question be necessarily involved and then only upon the allowance of the appeal by the circuit judge or by a judge of the supreme court.

It is within this Court's power to determine the rules of practice and procedure, and we are of the opinion that the framers of the Constitution never intended that the Legislature determine which litigants may appeal to this Court and which litigants must end their pursuit of justice in the circuit court. Accordingly, we find today that this Court has jurisdiction to hear the merits of Jones's appeal.

¶21. Having found a portion of Section 11-51-81 to be unconstitutional, we need to make perfectly clear that our finding on this issue in no way affects the constitutionality of the remainder of Section 11-51-81. Mississippi Code Section 1-3-77 (Rev. 2005) states in pertinent part:

> If any section, paragraph, sentence, clause, phrase or any part of any act passed hereafter is declared to be unconstitutional or void, or if for any reason is declared to be invalid or of no effect, the remaining sections, paragraphs, sentences, clauses, phrases or parts thereof shall be in no manner affected thereby but shall remain in full force and effect.

---

489, 135 So. 199 (1931); *Williams v. Town of Flora*, 13 So. 3d 875 (Miss. Ct. App. 2009); *Wilkins v. City of Florence*, 970 So. 2d 260 (Miss. Ct. App. 2007); *Withers v. City of Pearl*, 919 So. 2d 1050 (Miss. Ct. App. 2005); *Johnson v. State*, 879 So. 2d 1057 (Miss. Ct. App. 2004); *Sasser v. City of Richland*, 850 So. 2d 206 (Miss. Ct. App. 2003); *Draper v. City of Flowood*, 736 So. 2d 512 (Miss. Ct. App. 1999).

Thus, it is without question from express legislative language that this statute is severable, and the remainder of the statute is effective. *Lewis v. State*, 765 So. 2d 493, 500 (Miss. 2000). *See also O'Neal v. Simpson*, 350 So. 2d 998, 1003 (Miss. 1977).

¶22. Because of our disposition on this issue, we now proceed to address the issue originally raised by Jones on appeal.

## II. WHETHER LAW ENFORCEMENT OFFICIALS HAD PROBABLE CAUSE TO STOP JONES PRIOR TO HIS ARREST.

¶23. At his trial in county court, Jones filed a motion to dismiss the charges against him based on what Jones believed to be the police officers' lack of probable cause to stop his vehicle as it traveled north on Old Canton Road in the City of Ridgeland on the night in question. The county-court judge requested that the parties submit briefs on the issue of probable cause to stop and subsequently denied Jones's motion to dismiss. Jones was found guilty of DUI and careless driving. While this case was before the Court of Appeals, that court dutifully dismissed Jones's appeal pursuant to Section 11-51-81. Understandably, based on the dismissal pursuant to statute, there was no need for the Court of Appeals to consider the merits of Jones's lack-of-probable-cause argument. We do so now.

¶24. "When considering a motion to dismiss, this Court's standard of review is de novo." *Meadows v. Blake*, 36 So. 3d 1225, 1229 (Miss. 2010) (citing *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1275 (Miss. 2006)).

¶25. "An automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an

14

automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." ***Whren v. United States***, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (citing ***Del. v. Prouse***, 440 U.S. 648, 659, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); ***Pa. v. Mimms***, 434 U.S. 106, 109, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977)). The test for determining probable cause in Mississippi is the totality of the circumstances. ***Harrison v. State***, 800 So. 2d 1134, 1138 (Miss. 2001) (citing ***Haddox v. State***, 636 So. 2d 1229, 1235 (Miss. 1994)). Probable cause has been defined as:

> a practical, nontechnical concept, based upon the conventional considerations of every day life on which reasonable and prudent [persons], not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which [that officer] has reasonably trustworthy information, are sufficient in themselves to justify a [person] of average caution in the belief that a crime has been committed and that a particular individual committed it.

***Conway v. State***, 397 So. 2d 1095, 1098 (Miss. 1980) (quoting ***Strode v. State***, 231 So. 2d 779, 782 (Miss. 1970)).

¶26.     While Jones makes a lack-of-probable-cause-to-stop argument, he likewise argues that the stop was illegal because the events causing Ivy to stop Jones occurred on private property and were not a violation of any law. Jones directs our attention to ***Vaughan v. Lewis***, 236 Miss. 792, 112 So. 2d 247 (1959), in which this Court held that statutes regulating public roadways and intersections "obviously have no legal application . . . so far as the regulation of traffic on private property is concerned." ***Vaughan***, 236 Miss. at 798, 112 So. 2d at 249. However, ***Vaughan*** unquestionably has no application to the facts of today's case. ***Vaughan*** involved a collision between two trucks on private property during the construction of the

15

Columbus Air Force Base in Lowndes County. This Court merely held that the statutory rules of the road had no application to an accident occurring on private property. *Id.* Obviously, *Vaughan* lends us no guidance in considering the facts of today's case, in which two City of Ridgeland police officers were dutifully patrolling the city streets of Ridgeland when they observed a disturbance in the private parking lot of Buffalo Wild Wings, a business open to the general public and situated within the corporate limits of the City of Ridgeland.

¶27. Police officers may enter private property that is open to the general public to investigate criminal activity. *Waldrop v. State*, 544 So. 2d 834, 838 (Miss. 1989) (citing 1 W. Lafave, *Search and Seizure*, § 2.3, 318 (1978)). This Court has held that a valid traffic stop may be based on observations made on private property. *Dies v. State*, 926 So. 2d 910, 919 2006). In *Dies*, Mississippi Bureau of Narcotics agents observed the smell of burnt marijuana coming from a car in the parking lot of a bar in Columbus, Mississippi. *Id.* at 913. Rather than stopping the defendant in the parking lot, the agents contacted a Columbus police officer and informed the officer of what they had observed. *Id.* Based on the observations made by the narcotics agents, the police officer stopped the defendant after he had driven his car out of the parking lot and onto a public road. *Id.* This Court held that the stop was valid, partly because the information observed by the agents was "in space that was open to the public" and "[t]he agents in no way entered into a space in which [the defendant] had a reasonable expectation of privacy." *Id.* at 918.

¶28. Similar to *Dies*, in the present case, Ivy observed illegal activity on private property and subsequently stopped Jones on a public road. Additionally, based on the totality of the

16

circumstances, we find that Ivy did have probable cause to stop Jones. Ivy testified that Jones had been arguing with another man in the Buffalo Wild Wings parking lot, had nearly collided with his patrol car, had appeared intoxicated, and was not wearing a seatbelt. Ivy decided to stop Jones and watched as he exited the parking lot and entered a public road. Upon exiting the parking lot, Jones made an unusually wide turn on to a public road and failed to stop at a red light. Ivy testified that, based on these observations, he formed the opinion that Jones was driving under the influence. The evidence also revealed that Jones ran the red light at the Lake Harbour Drive/Old Canton Road intersection and proceeded north on Old Canton Road. Likewise, even though Ivy and Fisher had activated the blue lights and siren of their police cruiser, Jones still failed to stop as he traveled north on Old Canton Road. Only after a second patrol car pulled alongside Jones's vehicle, did Jones finally stop on Old Canton Road. As he approached Jones's car, Ivy observed Jones passing a beer bottle to his passenger, and once he arrived at the driver's side door of Jones's vehicle, Ivy detected a strong odor of alcohol coming from inside the vehicle. Ivy administered to Jones a field-sobriety test and a Breathalyzer test which was positive for the presence of alcohol.

¶29. These circumstances are "sufficient in themselves to justify a [person] of average caution in the belief that a crime has been committed and that" Jones committed it. *Conway*, 397 So. 2d at 1098 (quoting *Strode*, 231 So. 2d at 782). Accordingly, we find that the county court did not err in denying Jones's motion to dismiss based on the police officers' alleged lack of probable cause to stop Jones's vehicle on the city streets of Ridgeland.

17

**CONCLUSION**

¶30. We granted certiorari to determine the constitutionality of the "three-court rule" in Section 11-51-81. We hold that the three-court rule found in the statute is unconstitutional because it usurps this Court's constitutional rule-making power and violates the doctrine of separation of powers. Thus, we state today that any litigant whose case originates in either justice court or municipal court, and whose case is ultimately decided by the circuit court, whether it be via a trial de novo or on appellate review from a final judgment of the county court conducted by the circuit court under the applicable statute, shall have the right to appeal to this Court.

¶31. Finally, in considering the merits of the additional issue raised on appeal, we find no merit in Jones's contention that the City of Ridgeland police officers lacked probable cause to conduct a traffic stop of the vehicle Jones was driving. Therefore, we vacate the Court of Appeals' judgment of dismissal. We affirm the Madison County Circuit Court's judgment which affirmed the judgment of conviction and sentence entered by the County Court of Madison County.

¶32. **THE JUDGMENT OF THE COURT OF APPEALS IS VACATED. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED. THE CONVICTION BY THE COUNTY COURT OF MADISON COUNTY OF DUI FIRST OFFENSE AND CARELESS DRIVING AND SENTENCE OF FORTY-EIGHT (48) HOURS IN JAIL AND A FINE OF FIFTY (50) DOLLARS, WITH CONDITIONS, AFFIRMED**.

   **GRAVES, P.J., DICKINSON, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART II AND IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WALLER, C.J., CONCURS IN PART**

18

**AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH AND LAMAR, JJ.**

**WALLER, CHIEF JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶33.    By striking down the three-court rule as a violation of separation of powers, the majority asserts that this Court—not the Legislature—dictates the right to appeal. According to the majority, this Court has the power to determine its own jurisdiction. I believe that such a concept is foreign to our Constitution and to our laws.

¶34.    Though I agree that Jones's conviction and sentence should be affirmed, I strongly disagree with the majority's treatment of Section 11-51-81 of the Mississippi Code, also known as the three-court rule. Miss. Code Ann. § 11-51-81 (Rev. 2002). First of all, we should not address the constitutionality of the three-court rule because that issue was not raised before the circuit court, the Court of Appeals, or in Jones's petition for writ of certiorari to this Court. But if we must address the issue, I find the rule to be constitutional. The three-court rule does not violate the separation-of-powers doctrine because the Legislature determines the right to appeal and sets, along with our Constitution, this Court's appellate jurisdiction. Furthermore, the equal-protection argument was laid to rest long ago by this Court and by the Supreme Court of the United States. *Worley v. Papas*, 161 Miss. 330, 135 So. 348 (1931); *see Missouri v. Lewis*, 101 U.S. 22, 11 Otto 22, 25 L. Ed. 989 (1879).

¶35.    Even if the three-court rule arguably does violate the separation-of-powers doctrine, I believe that this Court should adopt the rule as its own, considering that the rule does not

violate any constitutional rights and because of our longstanding recognition and application of the rule.

¶36. For these reasons, which are elaborated further below, I respectfully concur in part and in result.

### DISCUSSION

I. **Because the constitutionality of the three-court rule was not challenged at trial or on appeal, we should not address the issue.**

¶37. The constitutionality of the three-court rule was not raised in Jones's petition for writ of certiorari. The Court, instead, asked for supplemental briefing on that particular issue when it granted Jones's petition.

¶38. As a principle of sound judicial administration, we generally do not consider issues that were not first presented to and decided by the trial court. *E.g.*, ***Educ. Placement Servs. v. Wilson***, 487 So. 2d 1316, 1320 (Miss. 1986); Luther T. Munford, *Mississippi Appellate Practice* § 3.7, 3-24 (2006) (citing ***Wilson***, 487 So. 2d at 1320). Challenges to the constitutionality of a statute, in particular, are not considered unless specifically pleaded. *E.g.*, ***State ex rel. Carr v. Cabana Terrace, Inc.***, 247 Miss. 26, 37, 153 So. 2d 257, 260 (Miss. 1963) (citing ***Pacific State Box and Basket Co. v. White***, 296 U.S. 176, 56 S. Ct. 159, 80 L. Ed. 138 (1935)).

¶39. I do not contest this Court's right to ask parties to file supplemental briefing on an issue. Miss. R. App. P. 28(a)(3). I believe we have the authority to do so even as to issues that were not raised at trial or on appeal. But we should use care and the utmost restraint in

doing so to refrain from becoming "the originators instead of the settlers of litigious disputes." *See* V.A. Griffith, C.J., *Mississippi Chancery Practice* § 564 (2d ed. 1950). I fail to see the urgent need for us, at our own insistence, to address the constitutionality of a statute that, in my judgment, poses no threat to the fabric of our judicial system and for which no wrong was asserted on appeal. I believe it would have been better to have simply addressed the issues raised before us and left the constitutionality of the three-court rule for a case where that issue is assigned as error on appeal.

¶40. Though I disagree with the Court's decision to raise and request supplemental briefing on the constitutionality of the three-court rule, that decision stands. As a result, I am compelled to express why I believe that the three-court rule is, in fact, constitutional.

**II.** **Because the Legislature prescribes whether or not a right of appeal exists and defines, alongside our Constitution, this Court's appellate jurisdiction, the three-court rule does not violate the separation-of-powers doctrine.**

¶41. In considering the constitutionality of the three-court rule, we should bear in mind that legislative enactments carry a strong presumption of constitutionality. *E.g.*, **Estate of McCullough v. Yates**, 32 So. 3d 403, 412 (Miss. 2010) (citations omitted). Statutes must be proven beyond a reasonable doubt to be unconstitutional. **Id.** Any doubt must be resolved in favor of upholding the validity of the statute. **Id.** (citing **Univ. of Miss. Med. Ctr. v. Robinson**, 876 So. 2d 337, 339-340 (Miss. 2004)).

¶42. The three-court rule is a statutory directive that governs the right to appeal from circuit court to this Court in any case that (1) originated in justice, municipal, or police court,

and (2) was appealed previously to county court. Miss. Code Ann. § 11-51-81 (Rev. 2002). It allows an appeal in such instances only where the case involves a constitutional question. Miss. Code Ann. § 11-51-81 (Rev. 2002). By this statute, the Legislature is prescribing when a right of appeal exists and limiting this Court's jurisdiction, both of which it may do.

¶43.    The right of appeal is purely a creature of statute. *E.g.*, ***Abney v. U. S.***, 431 U.S. 651, 656, 97 S. Ct. 2034, 2038 (1977). Our longstanding, well-established caselaw supports that a party has no right to appeal unless the Legislature gives such right by statute. ***Marshall v. State***, 662 So. 2d 566, 568-71 (Miss. 1995) (stating that the "Legislature has plenary power over appeals where the Mississippi Constitution has not limited this power," and pointing out that the right to appeal is subject to legislative change); ***Bickham v. Dep't of Mental Health***, 592 So. 2d 96, 97 (Miss. 1991) (stating that "[a] right of appeal is statutory") (citing ***Jones v. Barnes***, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312-13, 77 L. Ed. 2d 987, 993 (1983)); ***Gill v. Miss. Dep't of Wildlife Conservation***, 574 So. 2d 586, 590 (Miss. 1990) (recognizing that "a party has no right of appeal, except insofar as it has been given by law"); ***Fleming v. State***, 553 So. 2d 505, 506 (Miss. 1989) (stating that "[a]n appeal is a matter of statutory right and not based on any inherent common law or constitutional right") (citing ***Jones***, 463 U.S. at 751); ***Sanford v. Bd. of Supervisors, Covington County***, 421 So. 2d 488, 490-91 (Miss. 1982) (noting that "an appeal is not a matter of right but is subject to the statutory provisions") (citing ***Bradley v. Holmes***, 242 Miss. 247, 134 So. 2d 494 (1961)); ***Miller Transporters Ltd. v. Johnson***, 252 Miss. 244, 249, 172 So. 2d 542, 544 (1965) (asserting that "[t]he right to appeal is a statutory privilege, granted and defined by the legislature");

22

***McMahon v. Milam Mfg. Co.***, 237 Miss. 676, 679, 115 So. 2d 328, 330 (1959) (stating that "[a]ppeals are regulated by statute, and only lie in cases provided by statute") (citations omitted); ***State ex rel. Patterson v. Autry***, 236 Miss. 316, 320, 110 So. 2d 377, 378 (Miss. 1959) (stating that a right to appeal must be supplied by statute) (citations omitted), *overruled on other grounds*; ***J.R. Watkins Co. v. Guess***, 196 Miss. 438, 17 So. 2d 795, 796 (1944) (noting that "[t]he requirements for appeals are purely statutory") (citation omitted), *overruled in part on other grounds*; ***Jackson v. Gordon***, 194 Miss. 268, 273, 11 So. 2d 901, 902 (1943) (pointing out that "[a]ppeals are not matters of right, and are allowable only in cases provided by statute"); ***Craig v. Barber Bros. Contracting Co.***, 190 Miss. 182, 187, 199 So. 270, 272 (1941) (stating that "[i]n this state, appeals are regulated by statute and only allowed in cases provided by statute") (citations omitted); ***State v. Poplarville Sawmill Co.***, 119 Miss. 432, 441, 81 So. 124, 127 (1919) (stating that "[a]ppeals are regulated by statute, and only lie in cases provided by statute") *overruled in part on other grounds*; ***Bridges v. Bd. of Supervisors of Clay County***, 57 Miss. 252, 254 (1879) (stating that "[i]t has been settled from an early day in this State that appeals are not a matter of right, and are allowable only in cases provided for by statute") (citations omitted); *see also* ***Rosson v. McFarland***, 933 So. 2d 969, 971 (Miss. 2006) (stating that "an appeal is not a matter of right but is subject to . . . statutory provisions") (citing ***Bradley***, 242 Miss. 247); ***Wolfe v. City of D'Iberville***, 799 So. 2d 142, 150 (Miss Ct. App. 2001) (Southwick, P.J., concurring) (explaining that "whether there is a right to move beyond the initial court to a higher level, i.e., whether there

is a right to appeal, has traditionally been held to be a matter solely of legislative discretion")

(citing *Gill*, 574 So. 2d at 590).

¶44. The three-court rule is nothing more than the Legislature exercising its authority to define the right of appeal in certain categories of cases. To suggest that this power belongs to us is to insinuate that we are the arbiters of our own appellate jurisdiction. Our Constitution makes clear that this is not the case.

¶45. Mississippi's Constitution vests itself and the Legislature with the authority to establish this Court's appellate jurisdiction. Section 146 of the Mississippi Constitution states that this Court "shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law." Miss. Const. art. 6, § 146. The statement that this Court "shall have such jurisdiction as properly belongs to a court of appeals" should not be construed over broadly as giving us some type of inherent, appellate authority. This Court interpreted similar language found in Article 4, Section 4, of the Constitution of 1832, as meaning simply that the framers purposed to establish an appellate tribunal. *Dismukes v. Stokes*, 41 Miss. 430, 432-33, 1867 WL 2306 at *1 (Miss. Err. App. 1867). The *Dismukes* Court went on to explain that the determination of what matters "properly belong" to such appellate tribunal "depend[s] on general considerations of public policy, which, for the most part, must be determined by the [L]egislature, subject to such restrictions on their general powers as are contained in the [C]onstitution." *Id.* at 433. Section 146 affirms and strengthens this notion. Unlike any provision within the Constitution of 1832, Section 146

24

expressly limits our jurisdiction to those matters specifically provided by the Constitution or by "general law." Miss. Const. art. 6, § 146. The term "general law" undoubtedly means legislative acts, as evidenced by the very next sentence of Section 146, which states that "[t]he Legislature may *by general law* . . ." give this Court jurisdiction over certain types of cases. Miss. Const. art. 6, § 146 (emphasis added).

¶46.   ***Dismukes*** affirms the Legislature's authority to limit this Court's jurisdiction. The appellants in that case attempted to appeal the circuit court's affirmance of a decision by the county's board of police. ***Dismukes***, 41 Miss. at 432. The appellee, however, sought to dismiss the appeal because a certain statute in effect at that time made the judgment of the circuit court final, thus negating a right to appeal. ***Id.*** The appellants contested that this statute was unconstitutional because it denied them a right to appeal to this Court (then known as the High Court of Errors and Appeals). ***Id.*** This Court upheld the statute and found that, as a general rule, "the [L]egislature has the power to deny the right of prosecuting . . . an appeal in this court, in any particular case, and that a rule so enacted will be conclusive of the question of jurisdiction, unless it be in contravention of a positive right . . . ." ***Id.*** at 434. Significantly, the Court added that nothing is "more clearly within the legislative power over matters pertaining to public policy, than the question, in what cases and to what courts shall a party be entitled to an appeal . . . ." ***Id.*** at 433-34.

¶47.   In sum, determinations concerning the right to appeal and the jurisdiction of this Court belong to our constitution and to the Legislature.

25

**III. The Supreme Court of the United States has held that statutes like the three-court rule do not violate the Equal Protection Clause of the Fourteenth Amendment, and this Court has held specifically that the three-court rule does not deprive litigants of equal protection under the laws.**

¶48. Although the majority strikes down the three-court rule on the grounds of separation of powers, there are equal-protection undertones in its opinion as well. Underlying this entire controversy is the idea that the three-court rule is unfair to litigants who reside in one of the twenty counties that feature a county court. Why should those litigants' right to appeal be any different from litigants who reside in one of the sixty-two counties that do not have a county court? Yet these distinctions are legally valid under the Equal Protection Clause.

¶49. Back in 1931, this Court held that the three-court rule does not deprive litigants of equal protection under the law. *Worley*, 161 Miss. 330. *Worley* admittedly lacks much in-depth analysis on the subject. But the Supreme Court of the United States has spoken more thoroughly and authoritatively to the issue.

¶50. In *Lewis*, the Supreme Court addressed a constitutional challenge to Missouri state law which granted its citizens the right to appeal to the state supreme court from any circuit court, but refused this right to citizens of one municipality and four counties. *Lewis*, 101 U.S. at 29. For those particular localities, the Missouri Constitution established a separate court of appeals. *Id.* An appeal was allowed from that court of appeals to the state supreme court only if the amount in controversy exceeded a certain amount and the case involved certain subject matter. *Id.* Appellants challenged that these laws violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because

26

it denied litigants in those particular localities a right to seek redress in the state's highest court . *Id.* The Supreme Court found no merit in this argument. *Id.* at 29-33. The Court held that states have the "undoubted power" to regulate the jurisdiction of their own courts and to prescribe differences based on locale, including variations with regard to the finality of decisions. *Id.* at 30-33.

> [The Fourteenth Amendment] contemplates persons and classes of persons. It has not respect to local and municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made. The amendment could never have been intended to prevent a [s]tate from arranging and parcelling out the jurisdiction of its several courts at its discretion. . . . It is the right of every State to establish such courts as it sees fit, and to prescribe their several jurisdictions as to territorial extent, subject-matter, and amount, and the finality and effect of their decisions, provided it does not encroach upon the proper jurisdiction of the United States, and does not abridge the privileges and immunities of citizens of the United States, and does not deprive any person of his rights without due process of law, nor deny to any person the equal protection of the laws, including the equal right to resort to the appropriate courts for redress. The last restriction, as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances, to resort to them for redress. . . . As respects the administration of justice, [each state] may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a [s]tate to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by any thing in the Constitution of the United States, including the amendments thereto.

*Lewis*, 101 U.S. at 30-31.

¶51.    Thus, according to *Lewis*, states may limit appellate review based on locale so long as the law applies equally to every person within that particular area. *Id.* at 30-33. Because

27

the three-court rule applies equally to every person within the twenty counties that it affects, the rule does not offend the Equal Protection Clause. There is, of course, the possibility that distinctions like those made by the three-court rule could be aimed at, or have the effect of, discriminating against a certain class or race. *See id.* at 32. I fail to see how that could be the case here, considering that the counties with county courts have diverse demographics and that those counties are spread across different parts of the state.

¶52.    I find no legal basis to conclude that the three-court rule deprives litigants of equal protection under the law.

### IV.    Because the three-court rule does not violate any constitutional rights and, because of this Court's longstanding recognition and application of the rule, the Court should adopt the rule as its own.

¶53.    Even if I am wrong and the three-court rule does in fact violate the separation-of-powers doctrine, I am convinced that we should nevertheless uphold the statute, because it does not violate anyone's constitutional rights and because of this Court's longstanding recognition of the rule.

¶54.    Our separation-of-powers framework is not so rigid that it requires us to strike down every statute that arguably encroaches upon this Court's rule-making turf. *Hall v. State*, 539 So. 2d 1338, 1346 n.20 (Miss. 1989). Certainly, we are obligated to correct legislative encroachments when "the decades have evidenced a constitutional impingement, impairing justice . . . ." *Newell v. State*, 308 So. 2d 71, 78 (1975). But otherwise, we should give deference to legislative expressions not out of obligation or accession to authority, but out respect for the Legislature as "as that branch of government closest to the people whom all

28

branches have been created to serve." *Hall*, 539 So. 2d at 1346 n.20. Even *Newell*—the landmark case in which this Court first asserted its inherent rule-making power—recognized the need for some level of deference: "[W]e hasten to say that as long as rules of judicial procedure enacted by the legislature coincide with fair and efficient administration of justice, the Court will consider them in a cooperative spirit to further the state's best interest . . . ." *Newell*, 308 So. 2d at 78.

¶55. We may choose to adopt legislative rules as our own where the invasion is minor, where the Legislature has acted within its authority, and where this Court has followed the rule for many years. *See Haralson v. State*, 308 So. 2d 222, 223-224 (Miss. 1975); *Hall v. State*, 539 So. 2d 1338, 1346 n.20 (Miss. 1989). Each of those criterion are satisfied here. As already discussed, the Legislature acted within its authority to pass the three-court rule. Moreover, this Court has invoked that rule to dismiss appeals since at least 1931. *Williams v. State*, 160 Miss. 489, 135 So. 1999 (1931). Perhaps most importantly, the three-court rule's invasion, if there be any, is minor. The rule does not infringe upon anyone's constitutional rights. As set forth above, the limitation prescribed by the three-court rule does not deprive anyone of equal protection under the law. Nor is the rule manifestly unjust. It permits appellate review by the circuit court, and it does not completely foreclose review by this Court. This is evidenced by the fact that we are considering this very case. The rule provides that a circuit judge or a justice may "allow" an appeal where the case involves a constitutional question. Miss. Code Ann. § 11-51-81 (Rev. 2002). To that end, the rule is pragmatic and efficient. It preserves judicial resources, but at the same time, gives us

29

discretion to apply those resources when needed to address issues of fundamental importance.

¶56.     Just because we may have the right or the power to strike down the three-court rule as an encroachment on our rule-making authority does not mean we should do so.  Indeed, "a branch of government could be commended for not insisting on exercising its full range of power."  *Wolfe*, 799 So. 2d at 149 (Southwick, P.J., concurring).  I see no harm in us adopting and continuing to follow a rule which does nothing to impair justice.

**CONCLUSION**

¶57.     I would prefer that we not address the constitutionality of the three-court rule, because it was not raised at trial or on appeal.  Nevertheless, I believe that the Legislature had the right to enact the rule.  Even if it did not, I maintain that this Court should adopt the rule as its own.

¶58.     For these reasons, I respectfully concur in part and in result.

**RANDOLPH AND LAMAR, JJ., JOIN THIS OPINION.**