## TANT *v.* FAIRCHILD, et al.

No. 40134 May 7, 1956 87 So. 2d 78

June 11, 1956 87 So. 2d 905

*F. B. Collins,* Laurel, for appellant.

128

*Hannah, Simrall & Aultman,* Hattiesburg, for appellees.

ROBERDS, P. J.

About eleven o'clock in the morning of May 8, 1952, a collision occurred between an automobile being driven by Mrs. Eleanor S. Tant and a truck being operated by W. R.. Fairchild. Mrs. Tant was personally injured. She sued Fairchild, and his servant who was driving the truck, and also another servant who was attempting to control and direct oncoming traffic at the point of the accident. The jury returned a verdict for defendants and Mrs. Tant appeals here.

A number of questions are raised on the appeal but since the case must be reversed because of error in an instruction granted defendants we do not deem it necessary to decide the other questions.

The instruction reads: "The court instructs the jury for the defendants that the burden of proof is on the plaintiff, and that before the plaintiff can recover, she must prove by a preponderance of the creditable evidence that first, the defendants were guilty of negligence, that secondly, the plaintiff was injured, and third, that the negligence of the defendants was the sole proximate cause of said injury, and if the plaintiff does not so prove these three elements by a preponderance of the creditable evidence, then it is your sworn duty to return a verdict for the defendants." It will be noted the instruction told the jury plaintiff could not recover unless she proved by the preponderance of the creditable evidence that the negligence of the defendants was "the sole proximate cause" of her injuries. That instruction eliminated all liability of defendants for contributory

negligence, if any. This must work a reversal unless defendants were entitled to a peremptory instruction. Able counsel for appellees say defendants were entitled to a directed verdict. We are confronted with that question.

The accident occurred at the crossing of Front and Teresa Streets in the northern part of Laurel, Mississippi. Both streets are paved. Front Street is about 25 feet in width. It runs generally north and south. Teresa Street is thirty feet wide and it extends east and west. Traffic is unusually heavy at the intersection and crossing of these two streets. Not only is it burdened with the city traffic but Mississippi Highways 15 and 84 and U. S. Highway 11 converge upon and pass through this crossing.

When the accident occurred Fairchild was transporting to the south a heavy steel beam through this intersection. The beam was 76 feet long 3 feet in height, eleven inches thick and weighed 22,600 pounds. The front end of it rested upon the back of a pickup truck. The rear end was supported by upright pieces placed upon a frame set upon four large rubber truck tires. The beam extended some 11 feet to the rear of this support. This vehicle, thus arranged and loaded with the beam, came south on Front Street to its intersection with Teresa. It there stopped, and, according to the evidence of defendants, William Q. Hughes, one of defendants, walked ahead of the truck directing it across Teresa Street south. The truck proceeded very slowly. William Hughes testified that when the front of the truck got across Teresa Street he came back on the east side of the truck to about the center of Teresa Street, stopping and directing traffic; that he then crawled under the beam to the west side thereof, and directed traffic approaching from the west going easterly; that he saw approaching from the west the automobile which was being driven by Mrs. Tant; that he had a flag in his hand and he waved that flag and also called out, in an effort to stop Mrs. Fant,

but that she proceeded to run into the steel beam about the center thereof from north to south, and was injured by the contact. However, a number of witnesses for the plaintiff testified that William Hughes did not come to the west side of the beam and direct oncoming traffic from the west. They said no one was on the west side of the beam undertaking to stop and direct traffic. In fact, there was some evidence that no one was directing traffic at all. That, of course, was an issue upon a very important fact. That is especially true since witnesses for defendant testified that the truck, after the front end got across Teresa Street to the south, stopped and had been standing still some three minutes before the accident happened.

■■ ■ Appellees say it is undisputed that the truck first entered and occupied the intersection and it had the right of way. That is the general rule. Section 8197, Miss. Code of 1942; Jones v. Carter, 192 Miss. 603, 7 So. 2d 519; 5 Am. Jur., Automobiles, pg. 663, Sec. 289, and pg. 667 Section 299, and pg. 669, Section 303. Also, 25 Am. Jur., Highways, pg. 307, Section 208. However, we do not think that rule relieved Fairchild from the duty of having a flagman present at this scene to direct and stop traffic at this busy crossing under the unusual facts of this case. As above stated, this steel beam was 76 feet long, 3 feet high, and weighed 22,600 pounds. When the accident happened the truck entirely blocked all traffic upon Teresa Street and the rear of the beam was some 11 feet back north of Teresa Street. It was impossible for any vehicle to pass. In addition to this some of the witnesses say the truck and its cargo had been stopped across Teresa Street for some 3 minutes. Section 8217, Code of 1942, prohibits vehicles stopping in intersections. We do not intimate whether this includes unavoidable stopping. We mention the section only as bearing upon the duty, if any, of Fairchild to have a flagman on the job in this case. The truck was running

slowly and necessarily consumed some time in attempting to cross Teresa Street. When it got into Teresa and stopped all traffic was blocked. We do not think the right conferred by said Section 8197, dealing with the first right to enter and occupy an intersection, necessarily relieved Fairchild from having someone at the proper place to stop and direct traffic while this huge cargo slowly wended its way across this intersection—especially if, as witnesses testified, it had been standing still entirely blocking traffic for some 3 minutes. It was an unusual situation. Such situations impose their own duties. McWhorter v. Draughn, 137 Miss. 515, 102 So. 567. Rights and duties are correlative. In 60 C.J.S. pg. 825, Section 350, it is said: ''While it is highly important that the law with respect to duties of drivers at highway intersections should be strictly enforced, highway rules announced by the courts and statutes defining the rights and conduct of drivers meeting at a highway intersection are not unyielding under all circumstances, and must be applied in each case in the light of the particular circumstances involved.'' Indeed, Fairchild seemed to recognize that the safety of the public called for protection under the circumstances of this case, for, according to his contention and proof, he did have a flagman at the scene for the purpose of directing traffic and protecting the traveling public. Whether as a reasonably prudent man he should have had one there, and whether in fact he did have one at the scene, and, if so, whether the means and methods used by that person constituted reasonable precaution to protect the rights of the plaintiff herein are questions for the jury.

Reversed and remanded.

*McGehee, C. J.* and *Lee, Holmes* and *Ethridge, JJ.,* concur.

## ON SUGGESTION OF ERROR

LEE, J.

 The original defendants in this cause were W. R. Fairchild, John Q. Hughes and William K. Hughes. William K. Hughes was not served with process; and during the trial, the plaintiff took a nonsuit as to him. In the opinion he was erroneously identified as William Q. Hughes.

The suggestion of error calls this to the attention of the Court, and the opinion is now corrected accordingly. In all other respects, the suggestion of error is overruled.

Sustained in part and overruled in part. All justices concur.