VAUGHN, et al. *v.* LEWIS, et al.

No. 41180 May 25, 1959 112 So. 2d 247

*Ben Owen,* Columbus, for appellants.

*W. J. Threadgill, Stone & Schweizer,* Columbus, for appellees.

LEE, J.

This litigation arose out of a collision between a truck of V & W Contracting Company, hauling cement, sand and gravel, driven by Bill Garrett, and a truck of Lewis and Hobbs Construction Company, loaded with six yards of clay gravel, driven by James Willis. The wreck occurred about 2 P. M. on December 5, 1957, on the air field, which was private property, while the trucks were employed in and about the construction of the Columbus Air Force Base in Lowndes County, Mississippi. Both vehicles were badly damaged.

F. M. Vaughan and Ray M. Waters, Jr., doing business as the V & W Contracting Company, filed their suit

against George N. Lewis and Marvin Hobbs, doing business as Lewis & Hobbs Construction Company, to recover for damages to their truck. The defendants, by their answer, denied that they were guilty of any negligence proximately resulting in the collision. They made their answer a counterclaim, charging that the collision and consequent damage to their truck resulted from the negligence of the plaintiff, and sought to recover for their damage.

The cause was submitted to the jury, and it found a verdict for the defendants and counterclaimants in the sum of $1,860. From the judgment entered, the V & W Contracting Company appealed.

Garrett, in his batch truck, was traveling in a southeasterly course along an asphalt taxi strip, about fifty feet wide, toward its intersection with a concrete parking apron, about three hundred feet wide. Admittedly he had accelerated his speed to about thirty-five miles an hour. Willis, driving from the south, had crossed the parking apron and entered the taxi strip and was proceeding northwesterly thereon at a speed of about twenty miles an hour when the two vehicles collided.

Garrett testified that he saw the other truck coming off the apron onto the strip, and he thought it was going to stop. When it did not do so, he cut to the left in order to dodge it, and was hit behind his door. He did not remember whether he applied his brakes or not.

Willis testified that, when he came onto the taxi strip, he saw the other truck approaching; that it was "coming close over on me"; that he cut to the right; and that the other truck, instead of turning to its right, cut to the left directly in front of him, thus causing the collision. He also said that Garrett was driving at a speed of about forty-five miles an hour, and that his windshield was so covered with the batch mixture that the driver had only "a little peep crack" out of which to see.

As a result of the collision, the gravel truck overturned, and actually its load was piled up just off the taxi strip on the north side, approximately one hundred feet from where that part of the strip intersected the parking apron.

The appellants contend that the court erred in giving the appellees an instruction to the effect that there were no stop or traffic signs in either direction, and that Garrett did not have priority in right-of-way over Willis; and that if the jury found ''from a preponderance of the evidence in this case that James Willis, the driver of the truck belonging to Lewis and Hobbs, had actually driven said truck into the intersection of said apron and taxi strip before the V & W Contracting Company truck driven by Ruben Bill Garrett arrived at said intersection then, as a matter of law, James Willis had what is commonly known as the right of way.''

While Mason Watkins, the assistant manager of the contractors on this project, testified that he designated the taxi strip as a roadway, and that all vehicles had to stop and yield the right-of-way thereon to the batch trucks, he admitted that he had told neither Willis nor Garrett of such designation, and that there were no stop signs or traffic signals to indicate such requirement. Moreover, he did not testify that he had communicated such designation to either of the employers of the two drivers. On the contrary, Marvin Hobbs, one of the appellees, testified that the drivers picked their own routes; that batch trucks did not have the right-of-way over other trucks; and that no one had ever instructed him to that effect. Besides Willis testified that all of the trucks used the strip in going to the apron; that he did not know that the batch trucks had the right-of-way; and that nobody ever told him that they had priority.

If Watkins did in fact designate the strip as a roadway, with priority for batch trucks, in view of his

utter failure to give reasonable notice thereof, manifestly the parties hereto were not bound by such designation.

■■ ■ Under the statutes applicable to public roadways and intersections, Subdivision III, Article 9, Division 5, Motor Vehicles, etc., Sections 8195, et seq., Code of 1942, Recompiled, unless priority is otherwise given, the vehicle first entering and occupying an intersection has the right-of-way. Jefferson Funeral Company v. Pinson, 219 Miss. 427, 69 So. 2d 234; Herring v. Hart, 225 Miss. 115, 82 So. 2d 710; Tant v. Fairchild, 228 Miss. 126, 87 So. 2d 78. ■■ ■ These statutes obviously have no legal application, as such, so far as the regulation of traffic on private property is concerned. ■■ ■ However, in regard to the respective duties of motorists at intersections, the statutes are based on the result of human experience. In most instances, that which is now a violation of statute, and therefore negligence by legislative fiat, was, prior to the enactment, also negligence under common-law principles. Cf. I. C. R. R. Company v. Mann, 141 Miss. 778, 106 So. 7; Clark v. Gilmore, 213 Miss. 590, 57 So. 2d 328.

■■ ■ The statutes, by requiring the observance of the adopted rules of the road, condemn the violation thereof as negligence, thus obviating the necessity of a judicial determination as to whether such violation constitutes negligence. ■■ ■ But common-law negligence, not negligence by reason of violation of a statute, was the question for determination.

■■ ■ In 65 C. J. S., Negligence, p. 304, Section 1 a (2), it is said: ''Of the numerous definitions of 'negligence', among the best has been declared to be 'the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury.' '' See also 38 Am. Jur., Negligence, Section 2, p. 643, as follows: ''* * * actionable negligence is the failure of one owing a duty

to another to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person would not have done, which omission or commission is the proximate cause of injury to the other.''

 It is clear that the criticized instruction, under the evidence in this case, correctly presented the appellees' theory.

But the appellants also say that the instruction was in conflict with an instruction which they obtained, and which told the jury that if they believed ''* * * from the evidence that the roadway on which plaintiffs' truck was traveling at the time of the collision was a through roadway and the area from which the defendants' truck came immediately prior to the accident was not a roadway, then the defendants' driver owed a duty to the plaintiffs to yield the right of way to plaintiffs' truck. * * *''

 From what has already been said, it is obvious that there was no substantial evidence to justify the giving of this instruction of the appellants. Since it ought not to have been given, it can afford no basis on which to predicate error.

Under the record, as made during the trial, there is no warrant for a response to the other contentions of the appellants.

No reversible error appears in the record, and the cause is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.