*533
ON WRIT OF CERTIORARI

CARLSON, Presiding Justice,
for the Court:
¶ 1. Jay Jones entered a plea of nolo contendere in the Municipal Court of Ridgeland for driving under the influence (DUI), possession of an open container of alcohol, and careless driving. Jones appealed to the County Court of Madison County and, after a trial de novo, he was found guilty of DUI and careless driving. Jones then appealed to the Circuit Court of Madison County, which affirmed the judgment of the county court. Jones appealed to us, and we assigned this case to the Court of Appeals. The City of Ridge-land filed a motion to dismiss, and the Court of Appeals granted the motion pursuant to Mississippi Code Section 11-51-81 (Rev.2002). Having granted Jones’s Petition for Writ of Certiorari, we now consider the issue of the constitutionality of the “three-court rule” found in Section 11 — 51— 81.
FACTS AND PROCEDURAL HISTORY
¶ 2. On Saturday evening, June 10, 2006, Ridgeland police officers Michael Ivy and Grady Fisher were on patrol near the intersection of Old Canton Road and Lake Harbour Drive.[1] Ivy was driving the police cruiser, and Fisher occupied the front seat, passenger side, of the vehicle. As they proceeded east on Lake Harbour Drive, they passed the Buffalo Wild Wings Restaurant located on the north side of Lake Harbour Drive. In the area of Buffalo Wild Wings, Lake Harbour Drive is a boulevard with two lanes for east-bound traffic and two lanes for west-bound traffic. Fisher observed what he believed to be an argument among several males in the Buffalo Wild Wings parking lot. Fisher alerted Ivy, who traveled a short distance in order to “cross over” and travel west-bound back to the Buffalo Wild Wings parking lot. By the time the officers reached the parking lot, a man later identified as Jay Jones was exiting the parking lot in his vehicle. Jones’s vehicle almost collided with the police officers’ patrol car. Jones was not wearing a seat-belt. The officers followed Jones’s vehicle out of the parking lot and observed Jones making an unusually wide turn as he pulled out of the parking lot traveling west on Lake Harbour Drive. Jones then turned right at the nearby intersection and proceeded north on Old Canton Road, after failing to stop at the red light at the intersection. Jones also failed to stop as he traveled north on Old Canton Road, although Ivy and Fisher by then had activated the blue lights and siren of their police cruiser. Once a second patrol car pulled alongside Jones’s vehicle, Jones stopped on Old Canton Road. As he approached Jones’s car, Ivy observed Jones passing a beer bottle to his passenger. When he arrived at the driver’s side door of Jones’s vehicle, Ivy detected a strong odor of alcohol coming from inside the vehicle. Ivy administered a field-sobriety test to Jones and a Breathalyzer test, which was positive for the presence of alcohol. Jones was arrested and charged with DUI, careless driving, and possession of an open container.
¶3. Jones pleaded nolo contendere in the Municipal Court of Ridgeland and appealed to the County Court of Madison County, where he was afforded a trial de novo,[2] Judge Ed Hannan presiding. At *534 his county-court trial, Jones filed a motion to dismiss, asserting that the police officers had lacked probable cause to stop his vehicle. The motion was denied, and Judge Hannan found Jones guilty of DUI and careless driving, sentencing him to forty-eight hours in jail and fining him $700 for the DUI and $50 for careless driving.[3] Jones then filed a notice of appeal in the Circuit Court of Madison County. The circuit court, sitting as an appellate court, affirmed the county court’s judgment of conviction and sentence. Jones then filed a notice of appeal with this Court, arguing that the county court had erred when it had denied his motion to dismiss due to the police officers’ lack of probable cause to conduct a stop of his vehicle. We assigned this case to the Court of Appeals.
¶4. After Jones filed his appellant’s brief, the City of Ridgeland filed a motion to dismiss the appeal. The motion was based on the “three-court rule” contained within Mississippi Code Section 11-51-81 (Rev.2002). In due course, the Court of Appeals entered an order dismissing Jones’s appeal pursuant to Section 11 — 51— 81. Jones’s motion for reconsideration was denied by the Court of Appeals, and this Court granted Jones’s subsequently filed petition for writ of certiorari. Upon granting certiorari, we entered an order allowing the parties to brief the issue of the constitutionality of the “three-court rule” in Section 11-51-81, and we likewise invited the Attorney General of Mississippi to submit a brief on this issue.[4] We now have received additional briefs from Jones and the Attorney General.
DISCUSSION
¶ 5. Before the Court of Appeals, Jones’s main argument was that the county-court judge had erred when he had failed to dismiss the charges against him. Jones had alleged that the City of Ridgeland police officers who had stopped him on the night in question had lacked probable cause to do so. However, whether we reach this issue today depends on our disposition of the critical issue before this Court, the constitutionality of the “three-court rule” contained in Section 11-51-81. Thus, we first discuss this issue.
I. WHETHER THE “THREE-COURT RULE” IN MISSISSIPPI CODE SECTION 11-51-81 IS CONSTITUTIONAL.
¶ 6. The Court of Appeals dismissed Jones’s appeal pursuant to Mississippi Code Section 11-51-81 (Rev.2002), which prohibits defendants who are aggrieved by a decision originating in justice or municipal court, and who have appealed to both county court and circuit court, from successfully appealing to this Court unless two requirements are met: (1) the appeal must involve a federal or state constitutional question, and (2) either the circuit court judge or a Supreme Court justice must “allow” the appeal. Section 11-51-81 reads:
All appeals from courts of justices of the peace, special and general, and from all municipal courts shall be to the county court under the same rules and regulations as are provided on appeals to the circuit court, but appeals from orders of the board of supervisors, municipal *535 boards, and other tribunals other than courts of justice of the peace and municipal courts, shall be direct to the circuit court as heretofore. And from the final judgment of the county court in a case appealed to it under this section, a further appeal may be taken to the circuit court on the same terms and in the same manner as other appeals from the county court to the circuit court are taken: Provided that where the judgment or record of the justice of the peace, municipal or police court is not properly certified, or is certified at all, that question must be raised in the county court in the absence of which the defect shall be deemed as waived and by such waiver cured and may not thereafter be raised for the first time in the circuit court on the appeal there to; and provided further that there shall be no appeal from the circuit court to the supreme court of any case civil or criminal which originated in a justice of the peace, municipal or police court and was thence appealed to the county court and thence to the circuit court unless in the determination of the case a constitutional question be necessarily involved and then only upon the allowance of the appeal by the circuit judge or by a judge of the supreme court.
Miss.Code Ann. § 11-51-81 (Rev.2002) (emphasis added).
¶7. Of the eighty-two counties in Mississippi, twenty counties have county courts. The litigants in these twenty counties whose cases originate in justice or municipal court and are appealed to county court and then to circuit court may not appeal to this Court unless their cases concern a constitutional question and the circuit judge or a supreme court justice allows the appeal. On the other hand, litigants in the sixty-two counties that do not have county courts may appeal to this Court when their cases originate in justice or municipal court and are appealed to circuit court, which conducts a trial de novo.[5] We find that the effect of this statute is that it prevents this Court from hearing appeals from cases originating in the justice or municipal courts of the twenty counties having county courts; thus, the statute usurps this Court’s constitutional power to establish procedural rules. Accordingly, today we announce that the “three-court rule” in Section 11-51-81 is unconstitutional and void.
¶ 8. The Mississippi Constitution grants the three coequal branches of government their power and prohibits the branches from infringing on the power granted to another. Article 1, Section 1, of our Constitution creates the three branches of government. “The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.” *536 Miss. Const, art. 1, § 1 (1890). Article 1, Section 2, of our Constitution further separates the three branches and prohibits one branch from exercising the power of another. “No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.” Miss. Const, art. 1, § 2.
¶ 9. The separation-of-powers doctrine outlined in Article 1, Sections 1 and 2, of our Constitution prescribes the limitations on the power of each branch of government. This doctrine ensures that the coequal branches do not encroach on the power of the others. Alexander v. State By and Through Allain, 441 So.2d 1329, 1385-36 (Miss.1983). Further, this Court has held that “[t]he rule is well settled that the judicial power cannot be taken away by legislative action. Nor may the Legislature regulate the judicial discretion or judgment that is vested in the courts. Any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional.” City of Belmont v. Miss. State Tax Comm’n, 860 So.2d 289, 297 (Miss.2003) (citing 16A Am.Jur.2d Constitutional Law § 286, at 209-10 (1998)).
¶ 10. We also must be cautious not to encroach on the constitutional powers belonging to the Legislature. See Finn v. State, 978 So.2d 1270, 1273 (Miss.2008) (citing Miss. Ethics Comm’n v. Grisham, 957 So.2d 997, 1003 (Miss.2007)). Our appellate jurisdiction is granted by both the Constitution and the Legislature “by general law.” Miss. Const, art. 6, § 146. Further, we have consistently held that a litigant’s right to an appeal is statutory and “not based on any inherent common law or constitutional right.” Gill v. Miss. Dep’t of Wildlife Conservation, 574 So.2d 586, 590 (Miss.1990); Fleming v. State, 553 So.2d 505, 506 (Miss.1989) (citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312-13, 77 L.Ed.2d 987 (1983)).
¶ 11. While the Legislature has the constitutional power to determine our appellate jurisdiction, the Constitution also grants the judiciary the power to establish its own rules of practice and procedure. Article 6, Section 144, states that “[t]he judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this Constitution.” Miss. Const, art. 6, § 144. “The phrase ‘judicial power’ in Section 144 of the Constitution includes the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business.” S. Pac. Lumber Co. v. Reynolds, 206 So.2d 334, 335 (Miss.1968) (citations omitted). The “fundamental constitutional concept of separation of powers” gives this Court the “inherent power ... to promulgate procedural rules.” Newell v. State, 308 So.2d 71, 76 (Miss.1975) (citing Matthews v. State, 288 So.2d 714, 715 (Miss.1974); Gulf Coast Drilling & Exploration Co. v. Permenter, 214 So.2d 601, 603 (Miss.1968); and S. Pac. Lumber. Co., 206 So.2d at 335 (Miss.1968)).
¶ 12. The issue before us is whether the Legislature may allow some litigants to appeal to this Court, while placing the restrictions of a constitutional question and approval from a circuit judge or Supreme Court justice on others. More specifically, does the “three-court rule” in Section 11-51-81 infringe on this Court’s constitutional “power to make rules of practice and procedure[?]” S. Pac. Lumber Co., 206 So.2d at 335. In addressing this issue, “we are unable to ignore the constitutional imperative that the Legislature refrain from promulgating procedural statutes.... ” Wimley v. Reid, 991 So.2d 135, 138 (Miss.2008). “We believe no citation of authority is needed for the univer *537 sally accepted principle that if there be a clash between the edicts of the Constitution and the legislative enactment, the latter must yield.” Newell, 308 So.2d at 77. “The rule is well settled that the judicial power cannot be taken away by legislative action. Nor may the Legislature regulate the judicial discretion or judgment that is vested in the courts.” 16A Am.Jur.2d Constitutional Law § 286, at 209-10 (1998).
¶ 13. In 1975, we first exercised our constitutional right to promulgate procedural rules in Newell. Newell, 308 So.2d at 76. Based on this authority, we adopted the Rules of Civil Procedure in 1981, the Rules of Evidence in 1985, and the Rules of Appellate Procedure in 1995. This power is also supported by statute. Mississippi Code Section 9-3-61 states in part:
As a part of the judicial power granted in Article 6, Section 144, of the Mississippi Constitution of 1890, the Supreme Court has the power to prescribe from time to time by general rules the form of process, writs, pleadings, motions, rules of evidence and the practice and procedure for trials and appeals in the Court of Appeals and in the circuit, chancery and county courts of this state and for appeals to the Supreme Court from interlocutory or final orders of trial courts and administrative boards and agencies, and certiorari from the Court of Appeals.
Miss.Code Ann. § 9-3-61 (Rev.2002).
¶ 14. The Mississippi Rules of Appellate Procedure begin by stating “[t]hese rules govern procedure in appeals to the Supreme Court of Mississippi and the Court of Appeals of the State of Mississip-pi_” M.R.A.P 1. The comment to Rule 1 explains that the rules “are not to be construed to extend or limit jurisdiction of the Supreme Court.” Keeping in mind this Court’s constitutional rule-making authority and the Legislature’s constitutional authority to establish our appellate jurisdiction, the essential inquiry then becomes whether Section 11-51-81 is a legislative grant of jurisdiction or an infringement on our power to promulgate rules of procedure.
¶ 15. We view the statute to be procedural in nature rather than jurisdictional.[6] Procedure is defined as “[t]he mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or defines the rights, and which, by means of the proceedings, the court is to administer; the machinery, as distinguished from its product.” Black’s Law Dictionary 1203-04 (6th ed.1990). When appealing to this Court, litigants use our Rules of Appellate Procedure as their “mode of proceeding” to ensure that the contested “legal right is enforced.” The “three-court rule” in Section 11-51-81 essentially turns off this Court’s “machinery” in the appeals process.
¶ 16. We feel it important to emphasize that today’s opinion is not intended to address, one way or the other, other statutes which provide for the right to an appeal. We limit our holding today to the “three-court rule” contained within Section 11-51-81 — that and that alone.
¶ 17. The issue of legislative usurpation of this Court’s rule-making power is not without precedent. In Newell, we held that a statute prohibiting trial judges from instructing the jury on the testimony or weight of the evidence unless one of the *538 parties had requested the instruction was an unconstitutional infringement on the judiciary’s inherent rule-making authority. Newell, 308 So.2d at 77-78. This Court in Newell characterized procedural statutes as “legislative suggestions,” to be followed only “unless determined to be an impediment to justice or an impingement upon the Constitution.” Id. at 76. In Glenn v. Herring, 415 So.2d 695, 698 (Miss.1982), we held that a statute requiring trial judges to render opinions in cases taken under advisement within six months violated the doctrine of separation of powers by impinging on our power to promulgate procedural rules. In Moran v. Necaise, 437 So.2d 1222, 1225 (Miss.1983), we exercised our rule-making power by prescribing a thirty-day time period after entry of judgment for perfecting an appeal, voiding a statute providing a forty-five-day time period for perfecting appeals.
¶ 18. For an appreciable period of time in our nation’s history, the power to promulgate the courts’ rules of practice and procedure was legislative. Many courts, including this Court and several courts of our sister states, have since found this power to be judicial, rather than legislative. In accordance with this power, the courts have judicially enacted rules and subsequently found statutes that trespass into the realm of judicial rule-making to be void. For example, the District Court of Maryland has held that a statutory prescription of the time period in which a person must be brought to trial was an unconstitutional encroachment on the judiciary. U.S. v. Howard, 440 F.Supp. 1106, 1113 (D.C.Md.1977).
¶ 19. The Attorney General argues that voiding the statute will cause this Court to be “overwhelmed with appeals.” However, “[t]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution.” Alexander, 441 So.2d at 1339 (citing INS v. Chadha, 462 U.S. 919, 944, 103 S.Ct. 2764, 2780-81, 77 L.Ed.2d 317, 340 (1983)).
¶ 20. In the end, we conclude that the “three-court rule” found in Mississippi Code Section 11-51-81 (Rev.2002) contravenes the constitutional mandates imposed upon the Legislature and the judiciary.[7] The Legislature may not “exercise any power properly belonging” to the judiciary. Miss. Const, art. 1, § 2. We thus find this portion of Section 11-51-81 to be unconstitutional:
[A]nd provided further that there shall be no appeal from the circuit court to the supreme court of any case civil or criminal which originated in a justice of the peace, municipal or police court and was thence appealed to the county court and thence to the circuit court unless in the determination of the case a constitu *539 tional question be necessarily involved and then only upon the allowance of the appeal by the circuit judge or by a judge of the supreme court.
It is within this Court’s power to determine the rules of practice and procedure, and we are of the opinion that the framers of the Constitution never intended that the Legislature determine which litigants may appeal to this Court and which litigants must end their pursuit of justice in the circuit court. Accordingly, we find today that this Court has jurisdiction to hear the merits of Jones’s appeal.
¶21. Having found a portion of Section 11-51-81 to be unconstitutional, we need to make perfectly clear that our finding on this issue in no way affects the constitutionality of the remainder of Section 11-51-81. Mississippi Code Section 1-8-77 (Rev.2005) states in pertinent part:
If any section, paragraph, sentence, clause, phrase or any part of any act passed hereafter is declared to be unconstitutional or void, or if for any reason is declared to be invalid or of no effect, the remaining sections, paragraphs, sentences, clauses, phrases or parts thereof shall be in no manner affected thereby but shall remain in full force and effect.
Thus, it is -without question from express legislative language that this statute is severable, and the remainder of the statute is effective. Lewis v. State, 765 So.2d 498, 500 (Miss.2000). See also O’Neal v. Simpson, 350 So.2d 998, 1003 (Miss.1977).
¶ 22. Because of our disposition on this issue, we now proceed to address the issue originally raised by Jones on appeal.
II. WHETHER LAW ENFORCEMENT OFFICIALS HAD PROBABLE CAUSE TO STOP JONES PRIOR TO HIS ARREST.
¶ 23. At his trial in county court, Jones filed a motion to dismiss the charges against him based on what Jones believed to be the police officers’ lack of probable cause to stop his vehicle as it traveled north on Old Canton Road in the City of Ridgeland on the night in question. The county-court judge requested that the parties submit briefs on the issue of probable cause to stop and subsequently denied Jones’s motion to dismiss. Jones was found guilty of DUI and careless driving. While this case was before the Court of Appeals, that court dutifully dismissed Jones’s appeal pursuant to Section 11-51-81. Understandably, based on the dismissal pursuant to statute, there was no need for the Court of Appeals to consider the merits of Jones’s lack-of-probable-cause argument. We do so now.
¶ 24. “When considering a motion to dismiss, this Court’s standard of review is de novo.” Meadows v. Blake, 36 So.3d 1225, 1229 (Miss.2010) (citing Scaggs v. GPCH-GP, Inc., 931 So.2d 1274, 1275 (Miss.2006)).
¶25. “An automobile stop is ... subject to the constitutional imperative that it not be ‘unreasonable’ under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.” Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (citing Del. v. Prouse, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Pa. v. Mimms, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). The test for determining probable cause in Mississippi is the totality of the circumstances. Harrison v. State, 800 So.2d 1134, 1138 (Miss.2001) (citing Haddox v. State, 636 So.2d 1229, 1235 (Miss.1994)). Probable cause has been defined as:
*540 a practical, nontechnical concept, based upon the conventional considerations of every day life on which reasonable and prudent [persons], not legal technicians, act. It arises when the facts and circumstances within an officer’s knowledge, or of which [that officer] has reasonably trustworthy information, are sufficient in themselves to justify a [person] of average caution in the belief that a crime has been committed and that a particular individual committed it.
Conway v. State, 897 So.2d 1095, 1098 (Miss.1980) (quoting Strode v. State, 231 So.2d 779, 782 (Miss.1970)).
¶ 26. While Jones makes a laek-of-probable-cause-to-stop argument, he likewise argues that the stop was illegal because the events causing Ivy to stop Jones occurred on private property and were not a violation of any law. Jones directs our attention to Vaughan v. Lewis, 236 Miss. 792, 112 So.2d 247 (1959), in which this Court held that statutes regulating public roadways and intersections “obviously have no legal application ... so far as the regulation of traffic on private property is concerned.” Vaughan, 236 Miss. at 798, 112 So.2d at 249. However, Vaughan unquestionably has no application to the facts of today’s case. Vaughan involved a collision between two trucks on private property during the construction of the Columbus Air Force Base in Lowndes County. This Court merely held that the statutory rules of the road had no application to an accident occurring on private property. Id. Obviously, Vaughan lends us no guidance in considering the facts of today’s case, in which two City of Ridgeland police officers were dutifully patrolling the city streets of Ridgeland when they observed a disturbance in the private parking lot of Buffalo Wild Wings, a business open to the general public and situated within the corporate limits of the City of Ridgeland.
¶ 27. Police officers may enter private property that is open to the general public to investigate criminal activity. Waldrop v. State, 544 So.2d 834, 838 (Miss.1989) (citing 1 W. Lafave, Search and Seizure, § 2.3, 318 (1978)). This Court has held that a valid traffic stop may be based on observations made on private property. Dies v. State, 926 So.2d 910, 919 (2006). In Dies, Mississippi Bureau of Narcotics agents observed the smell of burnt marijuana coming from a car in the parking lot of a bar in Columbus, Mississippi. Id. at 913. Rather than stopping the defendant in the parking lot, the agents contacted a Columbus police officer and informed the officer of what they had observed. Id. Based on the observations made by the narcotics agents, the police officer stopped the defendant after he had driven his car out of the parking lot and onto a public road. Id. This Court held that the stop was valid, partly because the information observed by the agents was “in space that was open to the public” and “[t]he agents in no way entered into a space in which [the defendant] had a reasonable expectation of privacy.” Id. at 918.
¶ 28. Similar to Dies, in the present case, Ivy observed illegal activity on private property and subsequently stopped Jones on a public road. Additionally, based on the totality of the circumstances, we find that Ivy did have probable cause to stop Jones. Ivy testified that Jones had been arguing with another man in the Buffalo Wild Wings parking lot, had nearly collided with his patrol car, had appeared intoxicated, and was not wearing a seat-belt. Ivy decided to stop Jones and watched as he exited the parking lot and entered a public road. Upon exiting the parking lot, Jones made an unusually wide turn on to a public road and failed to stop at a red light. Ivy testified that, based on these observations, he formed the opinion *541 that Jones was driving under the influence. The evidence also revealed that Jones ran the red light at the Lake Harbour Drive/ Old Canton Road intersection and proceeded north on Old Canton Road. Likewise, even though Ivy and Fisher had activated the blue lights and siren of their police cruiser, Jones still failed to stop as he traveled north on Old Canton Road. Only after a second patrol car pulled alongside Jones’s vehicle, did Jones finally stop on Old Canton Road. As he approached Jones’s car, Ivy observed Jones passing a beer bottle to his passenger, and once he arrived at the driver’s side door of Jones’s vehicle, Ivy detected a strong odor of alcohol coming from inside the vehicle. Ivy administered to Jones a field-sobriety test and a Breathalyzer test which was positive for the presence of alcohol.
¶29. These circumstances are “sufficient in themselves to justify a [person] of average caution in the belief that a crime has been committed and that” Jones committed it. Conway, 397 So.2d at 1098 (quoting Strode, 231 So.2d at 782). Accordingly, we find that the county court did not err in denying Jones’s motion to dismiss based on the police officers’ alleged lack of probable cause to stop Jones’s vehicle on the city streets of Ridgeland.
CONCLUSION
¶ 30. We granted certiorari to determine the constitutionality of the “three-court rule” in Section 11-51-81. We hold that the three-court rule found in the statute is unconstitutional because it usurps this Court’s constitutional rule-making power and violates the doctrine of separation of powers. Thus, we state today that any litigant whose case originates in either justice court or municipal court, and whose case is ultimately decided by the circuit court, whether it be via a trial de novo or on appellate review from a final judgment of the county court conducted by the circuit court under the applicable statute, shall have the right to appeal to this Court.
¶ 31. Finally, in considering the merits of the additional issue raised on appeal, we find no merit in Jones’s contention that the City of Ridgeland police officers lacked probable cause to conduct a traffic stop of the vehicle Jones was driving. Therefore, we vacate the Court of Appeals’ judgment of dismissal. We affirm the Madison County Circuit Court’s judgment which affirmed the judgment of conviction and sentence entered by the County Court of Madison County.
¶ 32. THE JUDGMENT OF THE COURT OF APPEALS IS VACATED. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED. THE CONVICTION BY THE COUNTY COURT OF MADISON COUNTY OF DUI FIRST OFFENSE AND CARELESS DRIVING AND SENTENCE OF FORTY-EIGHT (48) HOURS IN JAIL AND A FINE OF FIFTY (50) DOLLARS, WITH CONDITIONS, AFFIRMED.
GRAVES, P.J., DICKINSON, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART II AND IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WALLER, C.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH AND LAMAR, JJ.

. Some of the facts surrounding the stop of Jay Jones's vehicle are in dispute. For the purpose of our discussion, we state the facts in the light most favorable to the prosecution.

. The county-court judge conducted a bench trial.

. Judge Hannan dismissed the charge of possession of an open container of alcohol.

. This Court may request the parties to argue an issue not distinctly identified for review. Mississippi Rule of Appellate Procedure 28(a)(3): "No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified.”

. Jones argues in his brief that the statute is unconstitutional because it deprives litigants in the twenty counties with county courts of an appeal to this Court and, as a result, violates the Equal Protection Clause. This argument was addressed in Worley v. Pappas, 161 Miss. 330, 135 So. 348 (1931), in which this Court held that the statute does not deprive litigants of equal protection of the law. The United States Supreme Court has also held that establishing one system of law within a particular territory of a state and another system within other territories of the same state does not violate the Equal Protection Clause. Missouri v. Lewis, 101 U.S. 22, 30-31, 25 L.Ed. 989 (1879). While the argument that the statute deprives certain litigants of equal access to the courts merits recognition, the general principle of separation of powers prohibits the Legislature from establishing procedural rules that permit some litigants to appeal to the Court, while prohibiting others from doing so. This is the subject of this opinion.

. Accordingly, we expressly overrule this Court’s holding in Sumrall v. City of Jackson, 576 So.2d 1259, 1260 (Miss.1991), that the requirements of a constitutional question and the approval of a circuit judge or Supreme Court justice in Section 11-51-81 are jurisdictional.

. The cases in which this Court and the Court of Appeals have dismissed appeals pursuant to Section 11-51-81 are now overruled as to this point. Davidson v. State, 592 So.2d 1006 (Miss.1992); Sumrall v. City of Jackson, 576 So.2d 1259 (Miss.1991); Barrett v. State, 491 So.2d 833 (Miss.1986); Alt v. City of Biloxi, 397 So.2d 897 (Miss.1981); Wells v. State, 201 Miss. 249, 29 So.2d 119 (1947); Kitchens v. State, 198 Miss. 346, 22 So.2d 493 (1945); State v. Warren, 197 Miss. 13, 19 So.2d 491 (1944); Keeton v. State, 197 Miss. 11, 19 So.2d 477 (1944); Johnson v. City of Hattiesburg, 170 Miss. 527, 155 So. 418 (1934); Gray v. Crump, 162 Miss. 251, 139 So. 463 (1932); Williams v. State, 160 Miss. 489, 135 So. 199 (1931); Williams v. Town of Flora, 13 So.3d 875 (Miss.Ct.App.2009); Wilkins v. City of Florence, 970 So.2d 260 (Miss.Ct.App.2007); Withers v. City of Pearl, 919 So.2d 1050 (Miss.Ct.App.2005); Johnson v. State, 879 So.2d 1057 (Miss.Ct.App.2004); Sasser v. City of Richland, 850 So.2d 206 (Miss.Ct.App.2003); Draper v. City of Flowood, 736 So.2d 512 (Miss.CtApp.1999).