CARLTON, J„
for the Court:
¶ 1. Khader Hanna Istiphan appeals his conviction and sentence for driving under the influence (DUI), first offense. Isti-phan raises the following assignments of error: whether (1) he was denied effective assistance of counsel in violation of his constitutional rights; (2) the verdict is against the overwhelming weight of the evidence; (3) the trial court erred in disallowing into evidence the toxicology report of serum and urine samples taken from Istiphan at St. Dominic’s Hospital on January 8, 2009, at 3:54 a.m., approximately three hours after his traffic stop; (4) the failure to admit into evidence the toxicology report effectively denied Istiphan of a fair trial in violation of his constitutional rights; (5) a verdict of guilty by the court being against the overwhelming weight of the evidence effectively denied him a fair trial in violation of his constitutional rights; and (6) the lower court erred in not granting a motion for a new trial.[1] Finding no error, we affirm.
FACTS
¶ 2. On January 8, 2009, at approximately midnight, Istiphan was traveling eastbound on Hoy Road in Madison, Mississippi, when he was stopped by Madison Police Department Officer James Craft. Officer Craft testified that, while on patrol, he observed Istiphan’s vehicle weaving in the roadway and crossing over the center lane markings. Officer Craft said when he approached the vehicle, he asked Istiphan, the driver of the vehicle, for his driver’s license and proof of insurance.[2] As this was taking place, Officer Craft testified that he smelled the odor of alcohol emitting from inside the vehicle. Officer Craft testified that he questioned Istiphan as to if he had been drinking, to which Istiphan replied he had consumed two drinks approximately two hours before he was stopped.[3] Officer Craft asked Istiphan to *1203 step out of the vehicle, and Istiphan complied. Officer Craft stated that he then attempted to administer a preliminary breath test (PBT), the horizontal gaze nys-tagmus test (HGN), and the walk-and-turn test; however, Istiphan would not cooperate and exhibited an argumentative demeanor. Officer Craft also testified that he again smelled the odor of alcohol coming from Istiphan during the attempted administration of the PBT, and Officer Craft observed that Istiphan demonstrated coordination impairment while he was trying to get Istiphan to complete the walk- and-turn test. After determining that he was not going to be able to successfully administer any of the sobriety tests, Officer Craft placed Istiphan under arrest for DUI and transported him to the City of Madison Police Department.[4]
¶ 3. Officer Craft testified that, once at the police department, Istiphan notified him that he was having an anxiety attack and needed medical attention. Officer Craft called Madison Rescue and AMR who arrived shortly thereafter and conducted an examination of Istiphan. While at the police department, Officer Craft also asked Istiphan to take the Intoxilyzer test, but Istiphan refused. Istiphan was charged with careless driving, DUI, first offense,[5] and DUI refusal. Istiphan then requested permission to go to the hospital to receive medical treatment, and he was released.[6] Istiphan testified that upon admission to St. Dominic’s Hospital, he requested a blood sample be drawn and tested for the presence of alcohol; however, the trial court found the toxicology report to be inadmissible at trial.
¶ 4. Istiphan entered a plea of nolo con-tendere in the Municipal Court of Madison County for DUI, first offense, and careless driving. He appealed his DUI conviction to the County Court of Madison County, where he received a trial de novo by the county court judge sitting without a jury. The county court ultimately found Istiphan guilty of DUI, first offense, in violation of Mississippi Code Annotated section 63 — 11— 30(l)(a) (Supp.2011). The county court judge then imposed a forty-eight hour suspended sentence, and ordered Istiphan to pay a fine of $900 and costs and assessments. He also ordered Istiphan to complete the Mississippi Alcohol Safety Education Program. Istiphan filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial, which the county court denied. Istiphan then appealed to the Circuit Court of Madison County. The circuit court, sitting as an appellate court, affirmed the judgment of the county court. Subsequent to the circuit court’s ruling, Istiphan requested a finding of a constitutional question of the circuit court, which was denied.
*1204 ¶ 5. Feeling aggrieved of his conviction and sentence, and the circuit court’s denial of the existence of a constitutional question, Istiphan filed his notice of appeal with the Mississippi Supreme Court, and the supreme court assigned the case to this Court.[7]
DISCUSSION
I. SUFFICIENCY & WEIGHT OF THE EVIDENCE [8]
¶ 6. Istiphan argues that the trial court erred in denying his motion for a directed verdict[9] because the evidence is insufficient to support his conviction of DUI, first offense, under Mississippi Code Annotated section 63-ll-30(l)(a). Istiphan also argues that the trial court erred by denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. Istiphan further claims that the guilty verdict by the court being against the overwhelming weight of the evidence denied him a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 3, Sections 14 and 26 of the Mississippi Constitution.
¶ 7. “In a criminal proceeding, motions for a directed verdict and a JNOV challenge the legal sufficiency of the evidence supporting the guilty verdict.” Bas-kin v. State, 39 So.3d 959, 962 (¶ 6) (Miss.Ct.App.2010) (quoting Croft v. State, 992 So.2d 1151, 1157 (¶ 24) (Miss.2008)). “Because a motion for a directed verdict and a motion for a JNOV both require consideration of the evidence before the trial court when the decision to grant or deny was made, this Court only reviews the ruling on the last occasion that the challenge was made.” Id. (citations omitted). Thus, we will review Istiphan’s challenge to the sufficiency of the evidence as pertaining to his motion for a JNOV. In determining whether the evidence is sufficient to sustain a conviction, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). The relevant question is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We will determine the evidence to be sufficient if the evidence against the defendant is such that “reasonable fair-minded men in the exer *1205 cise of impartial judgment might reach different conclusions on every element of the offense[.]” Id. (citations omitted).
¶ 8. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. at 844 (¶ 18) (citation omitted)). “The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)). We weigh the evidence, however, in the light most favorable to the verdict. Id. (citation omitted)).
¶ 9. Istiphan was convicted under Mississippi Code annotated section 63 — 11— 30(l)(a) (Supp.2011), which makes it “unlawful for any person to drive or otherwise operate a vehicle within this state who ... is under the influence of intoxicating liquor[.]” Section 63 — 11—30(l)(a) is commonly referred to as “common law DUI.” Knight v. State, 14 So.Sd 76, 79 (¶ 6) (Miss.Ct.App.2009) (quoting Gilpatrick v. State, 991 So.2d 130, 133 (¶ 18) (Miss.2008)). Common law DUI can be proven “[i]n cases where the ‘defendant’s blood-alcohol results are unavailable but there is sufficient evidence that the defendant operated a vehicle under circumstances indicating his ability to operate the vehicle was impaired by the consumption of alcohol[.]” Id. (citation omitted).
¶ 10. Here, ample evidence was offered by the City in support of Istiphan’s DUI conviction. Officer Craft testified to the following: he observed Istiphan’s vehicle weaving in the roadway and crossing over the center lane markings; he smelled alcohol emanating from Istiphan’s person and vehicle; Istiphan admitted that he had been drinking; Istiphan exhibited an uncooperative and argumentative demeanor; Istiphan demonstrated coordination impairment when attempting to complete the walk-and-turn test; and Istiphan refused the Intoxilyzer test.[10] We recognize that “[i]f a person under arrest refuses to submit to a chemical test under the provisions of this chapter, evidence of refusal shall be admissible in any criminal action under this chapter.” Miss.Code Ann. § 63-11-41 (Rev.2004). “This Court has found that evidence of a defendant’s refusal to submit to a breathalyzer test is relevant and admissible under Mississippi Rule of Evidence 402.” Knight, 14 So.3d at 80 (¶ 12) (citing Starkey v. State, 941 So.2d 899, 901 (¶5) (Miss.Ct.App.2006)). Additionally, a video recording of the traffic stop and the events that occurred in the booking room at the police department was admitted into evidence without objection, which allowed the judge to make an independent and neutral determination as to Istiphan’s actions and demeanor, separate and apart from the testimony presented at trial.
¶ 11. Viewing these facts in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Istiphan committed the crime of DUI, first offense, and he did so under such circumstances that every element of the offense existed. Further *1206 more, we find that the evidence did not preponderate so heavily against the verdict that allowing the verdict to stand would sanction an unconscionable injustice. See Cummings v. State, 29 So.3d 859, 862 (¶¶ 9-10) (Miss.Ct.App.2010). Accordingly, we find this issue is without merit.
II. TOXICOLOGY REPORT & INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 12. Istiphan argues the trial court erred in denying into evidence his toxicology report taken by a medical provider at St. Dominic’s Hospital approximately three hours after his traffic stop.[11] Istiphan contends that in accordance with Rule 803(6) of the Mississippi Rules of Evidence, he adequately identified the toxicology report and established it as his medical record. Istiphan further claims that the trial court should have considered the toxicology report if for no other reason than for its extreme probative value. Isti-phan argues that his trial counsel’s failure to admit the toxicology report into evidence effectively denied him a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to. the United States Constitution and Article 3, Sections 14 and 26 of the Mississippi Constitution.
¶ 13. “The standard of review applied to a trial court’s decision to admit or deny evidence is abuse of discretion.” Walker v. State, 55 So.3d 212, 216 (¶ 14) (Miss.Ct.App.2011) (citing Robinson Prop. Group, L.P. v. Mitchell, 7 So.3d 240, 243 (¶ 9) (Miss.2009)). “However, we will not reverse a trial court’s decision ‘unless the error adversely affects a substantial right of a party.’ ” Id.
¶ 14. Rule 803(6) allows the admission of:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term “business” as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
At trial, Istiphan presented no testimony, other than his own, in seeking admission of his toxicology report into evidence. Isti-phan testified to the following:
SAVANT:[12] Now, we see in the video where you deal with the medical personnel, and then you choose to be transported to the hospital, correct?
ISTIPHAN: Yes. Yes.
SAVANT: You went to St. Dominic’s Hospital?
ISTIPHAN: Yes.
SAVANT: What happened once you got there?
ISTIPHAN: I was checked in, you know, anxiety — I had chest pain.... I immediately asked them to take a blood test—
SAVANT: Why did you do that?
*1207 ISTIPHAN: — for alcohol level. Because I knew — I realized that I’m in trouble, you know, as far as the DUI charge, and I wanted to prove that because I felt that I wasn’t under the influence of alcohol, I wanted them to take a test and see how much alcohol is in my system and prove to the [c]ourt.
SAVANT: Did you, in fact, have that test done?
ISTIPHAN: Yes, sir.
SAVANT: Did you receive the results of it?
ISTIPHAN: Yes, sir.
SAVANT: And what was detected at whatever time the blood was drawn?
HEDGLIN:[13] Objection. Lack of proper predicate.
COURT: Well, he can answer the question.
SAVANT: Based on your knowledge of what transpired and what- you were told by your doctors, what level of alcohol was found in your body?
HEDGLIN: Objection. Hearsay.
COURT: I think it is hearsay.
[[Image here]]
SAVANT: Let me show you a document, Mr. Istiphan, and ask if you recognize that.
ISTIPHAN: Yes, sir.
SAVANT: Does it have any identifying information on it as far as your information?
ISTIPHAN: Yes, sir. It has my name, my—
SAVANT: What else as far as identifying information?
ISTIPHAN: My age, my account number at St. Dominic [sic],
SAVANT: Now, was there blood drawn from you?
ISTIPHAN: Yes, sir.
SAVANT: Does that document indicate what time the blood was drawn from you?
ISTIPHAN: Yes. It says at 3:18 a.m.
SAVANT: On what day?
ISTIPHAN: On January the 8th.
SAVANT: And did you receive that document as part of your discharge from St. Dominic’s Hospital?
ISTIPHAN: Yes.
SAVANT: And did they test for your blood alcohol level based on what’s contained in that document?
ISTIPHAN: Yes, sir.
SAVANT: All right. Does it indicate how much, if any, alcohol was in your system based on the blood draw at 3:18 a.m., on January 8th, 2009?
ISTIPHAN: Yes. It indicates this.
HEDGLIN: I object to this entire line of questioning, lack of proper predicate.
COURT: I’ll allow that question and that answer.
[[Image here]]
SAVANT: You stated that it does indicate whether or not you had alcohol in your system. Without saying what it says, it does indicate whether or not you had alcohol in your system at 3:18 a.m., correct?
ISTIPHAN: Yes. Yes.
SAVANT: And you were given that when you were released from the hospital?
ISTIPHAN: Yes.
SAVANT: Okay. When were you released?
ISTIPHAN: Actually, I slept that night in the hospital. I was moved to upstairs in the heart unit to monitor my *1208 heart, but this was given to me that same night at the emergency room because I requested this. This is not part of their procedure.
SAVANT: And you produced that document to me to be used in your defense on this DUI charge, correct?
ISTIPHAN: Yes.
SAVANT: What does it indicate as far as any alcohol in your system?
ISTIPHAN: None—
HEDGLIN: Objection.
ISTIPHAN: — detected.
SAVANT: Let him finish his objection.
HEDGLIN: Objection. Lack of proper predicate. Don’t have witnesses here.
COURT: Mr. Savant?
SAVANT: I do not, Your Honor.
COURT: I’m sorry.
SAVANT: I do not have as far as physicians or anyone who drew blood or anything like that. In fact, the document indicates that they do not perform chain of custody control on their specimens. I withdraw that question .... May I proceed?
COURT: Are you proceeding to try to—
SAVANT: To get this in?
COURT: Yes.
SAVANT: No, your Honor.
COURT: Are you seeking to make a proffer?
SAVANT: Yes, Your Honor, just for purposes of the record, yes. I get confused somewhat without a jury here. You are the finder of fact. We would like it to be considered for purposes of the record, proffered testimony as to what it does indicate.
COURT: Well, with respect to making it a proffer, at this point[,] I feel like I have to sustain the objection....
The court then proceeded to hear arguments by both attorneys as to the admissibility of the toxicology report into evidence before again determining that Istiphan’s testimony as to the toxicology report’s admissibility should be limited to a proffer.
¶ 15. After reviewing the record, we find Istiphan’s testimony insufficient to satisfy the requisite predicate as stated in Rule 803(6).[14] As stated above, Rule 803(6) requires the sponsoring testimony of a “custodian or other qualified witness” that the report was “made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation .... ” Istiphan, through his testimony, failed to satisfy this burden. Furthermore, Istiphan does not argue that the toxicology report is self-authenticating, nor do we find any basis for such an assertion. Therefore, we find no abuse of discretion in the trial court’s determination as to the inadmissibility of the toxicology report. This issue is without merit.
¶ 16. The alternative argument made by Istiphan is that his trial counsel rendered ineffective assistance in violation of the Sixth and Fourteenth Amendment of the United States Constitution and Article 3, Section 14 of the Mississippi Constitution. Specifically, Istiphan alleges that his trial counsel had the toxicology report at his disposal and knew it to be persua *1209 sive in the absence of any other reliable evidence of intoxication as to be conclusive of innocence, but his counsel failed to obtain the necessary witness to authenticate the report for admission into evidence. Is-tiphan further asserts his trial counsel erred by never in fact offering the toxicology report into evidence; instead, he limited its offer to that of a proffer. In making this argument, however, Istiphan admits that the record shows a discussion between Istiphan’s trial counsel and the trial judge which indicated that the trial judge considered the admissibility of the toxicology report into evidence.
¶ 17. Speaking to the issue of ineffective-assistance-of-counsel claims brought on direct appeal, the Mississippi Supreme Court has stated:
Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately. Wilcher v. State, 863 So.2d 776, 825 (Miss.2003). In such a case, the appropriate procedure is to deny relief, preserving the defendant’s right to argue the issue through a petition for post-conviction relief. Read v. State, 430 So.2d 832, 837 (Miss.1983).
However, this Court may address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record. M.R.A.P. 22; see also Havard v. State, 928 So.2d 771, 786 (Miss.2006).
Gowdy v. State, 56 So.3d 540, 543 (117) (Miss.2010) (quoting Archer v. State, 986 So.2d 951, 955 (Miss.2008)). Because Istiphan’s allegations do not fall within the exceptions for addressing the issue on direct appeal, we find that Istiphan’s claim of ineffective assistance of counsel would be more appropriately raised in a motion for post-conviction relief. See Fluker v. State, 44 So.3d 1029, 1034 (¶ 13) (Miss.Ct.App.2010). Accordingly, we deny Istiphan relief on this issue without prejudice to allow him to pursue post-conviction relief is he desires to do so.
¶ 18. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT HOURS SUSPENDED IN THE CUSTODY OF MADISON COUNTY, MISSISSIPPI, AND TO PAY A FINE OF $900 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS AND FAIR, JJ„ CONCUR. MAXWELL, J„ CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. For clarity’s sake, we have consolidated several of Istiphan's assignments of error in our discussion.

. Istiphan’s mother, Antoanette Staphan, was a passenger in the vehicle.

.Officer Craft also testified that he asked Istiphan during the roadside stop if he was taking any medication, to which Istiphan responded, "he was — pain medication for his back, and then he said he wasn’t taking it.” At trial, Istiphan denied taking any pain medication on the night in question, but he admit *1203 ted that he had taken anti-stress medication at 5:30 p.m. on January 7, 2009.

. Officer Craft had a dash-mounted video camera in his vehicle which recorded the events that occurred during the roadside stop; the video recording was admitted into evidence at trial without objection. Officer Craft testified that the walk-and-turn test is not seen on the video recording because of the way Istiphan parked and the angle of the video camera.

. Istiphan was charged with DUI pursuant to Mississippi Code Annotated section 63 — 11— 30(l)(a) & (b) (Supp.2011). These statutory sections state: "(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; (b) is under the influence of any other substance which has impaired such person’s ability to operate a motor vehicle!.]" Miss.Code Ann. § 63-11-30(a), (b).

.A video recording of the events that took place in the booking room at the City of Madison Police Department was entered into evidence at trial without objection.

.The Mississippi Supreme Court in Jones v. City of Ridgeland, 48 So.3d 530, 535 (¶ 7) (Miss.2010) recently declared the three-court rule in Mississippi Code annotated section 11-51-81 (Rev.2002) to be unconstitutional. In describing the unconstitutionality of the rule, the supreme court explained that the three-court rule deprived appellate courts of jurisdiction where the case originated in justice or municipal court and was then appealed to both county and circuit court, unless the appeal involved a federal or state constitutional question or the circuit court judge or supreme court justice allowed the appeal. Id. at 534 (¶ 6) (citing Miss.Code Ann. § 11-51-81)). Therefore, with the three-court rule no longer in force, we have jurisdiction to consider the entirety of this appeal.

. While Istiphan frames this issue in his appellate brief in terms of the overwhelming weight of the evidence, he also argues that the court erred in denying his motion for directed verdict. Thus, we will review both the sufficiency and weight of the evidence in our discussion.

. The record shows Istiphan referred to his motion for directed verdict as a "motion to dismiss” when making his argument at trial.

. We recognize that “the test results of an HGN test have been declared inadmissible for purposes of proving that a person was under the influence of alcohol." Blake, v. State, 825 So.2d 707, 708 (¶ 7) (Miss.Ct.App.2002) (citation omitted). Therefore, we decline to include Officer Craft's testimony concerning the administration of the HGN results in our review of the weight and sufficiency of the evidence.

. The toxicology report proffered by Istiphan indicated Istiphan’s ethanol level as "none detected.”

. Tommy Savant represented Istiphan during the trial in county court.

. John Hedglin served as counsel for the State.

. While we recognize Istiphan cites Jones v. Jones, 43 So.3d 465, 483-84 (¶¶ 48-51) (Miss.Ct.App.2010), as an analogous case where this Court found the lower court did not abuse its discretion in admitting medical records under the Rule 803(6) business-records exception, that case is distinguishable from the present case insofar as the director of medical records for COPAC was presented at trial and testified as to the authenticity of the COPAC records and COPAC's regular practice of maintaining the medical records.